IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CHRYSANTHE PARKER** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | CIVIL ACTION NO. 5:21-CV-175-____ |
| **SPOTIFY USA, INC., HIGH FIVE CONTENT, LLC, TRADECRAFT ALTERNATIVE, LLC, and JASON CAVANAGH** | § § § § § § | |
| **Defendant.** | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Dr. Chrysanthe Parker ("Dr. Parker") files this Original Complaint against of Defendants Spotify USA, Inc., High Five Content, LLC, Tradecraft Alternative, LLC, and Jason Cavanagh and would show the Court as follows:

### I. INTRODUCTION AND PRELIMINARY STATEMENT

1.      Defendants obtained an interview with Dr. Chrysanthe Parker concerning her involvement in the trial of Charles Harrelson for the assassination of Judge John Wood, after whom this very courthouse is named. Defendants misrepresented the substance of that interview to help sensationalize their podcast "Son of a Hitman," and are profiting off the injury they caused to Dr. Parker's professional reputation.

### II. PARTIES

2.      Plaintiff is an individual residing in the Western District of Texas and may be served through her undersigned attorney of record.

3.  Defendant Spotify USA, Inc. is a Delaware corporation with its principal place of business in New York, New York. It may be served by serving its Delaware registered agent, National Registered Agents, Inc., at 1209 Orange Street, Wilmington, Delaware 19801 or wherever its registered agent may be found.

4.  High Five Content, LLC is a citizen of the State of California because, to the best of the information available to Plaintiff, all members are citizens of California. It may be served by serving its registered agent, Andrew Evan Jacobs, at 5156 El Rio Avenue, Los Angeles, California 90041 or wherever its registered agent may be found.

5.  Defendant Tradecraft Alternative, LLC is a citizen of the State of California because, to the best of the information available to Plaintiff, all members are citizens of California. It may be served by serving its registered agent, Ash Sarohia at 6121 Sunset Blvd, Los Angeles, California, 90028 or wherever its registered agent may be found.

6.  Defendant Jason Cavanagh is an individual citizen of the State of California and can be served at, 4440 Ambrose Ave, Apt 101, Los Angeles, California 90027 or wherever he may be found.

### III. JURISDICTION AND VENUE

7.  This court has "diversity" jurisdiction of this suit pursuant to 28 U.S. Code § 1332, because Plaintiff and Defendants are completely diverse, and Plaintiff seeks damages in excess of $75,000.00.

8.  This Court has personal jurisdiction over Defendants because they have transacted business in Texas and in the Western District of Texas Judicial District, traveled to Texas and the district in order to conduct interviews and make recordings that were used to produce the defamatory content at issue in this lawsuit, defamed a Plaintiff who is a citizen of Texas and resides in this

district, directed their activities and marketing of the defamatory content at Texas residents, and Texas residents are able to download and stream the defamatory content Texas. Furthermore, Defendants have derived substantial revenue from their defamatory content by exploiting the murder of Judge John Wood and seeking to mislead the public that a miscarriage of justice was perpetrated by the Western District of Texas.

9. Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

### IV. FACTUAL BACKGROUND

10. Dr. Chrysanthe Parker attended the St. Mary's University School of Law and had been practicing less than two years on May 29, 1979. That morning, outside her Alamo Heights apartment, she literally bumped into Charles Harrelson, who had been hired by drug lord Jamiel "Jimmy" Chagra to assassinate U.S. District Judge John H. Wood Jr. Charles Harrelson was a hitman and had already stood trial for one murder and been convicted of a second. Dr. Parker would go on to testify against him at his murder-for-hire trial as an eye witness placing Charles Harrelson at Judge Wood's apartment building the morning of the assassination, but her testimony was by no means the only or even key evidence of his guilt. Charles Harrelson was convicted and sentenced to two consecutive life terms plus 5 years. After one unsuccessful escape attempt and two unsuccessful appeals, Charles Harrelson died in the United States Penitentiary, Administrative Maximum Facility "Supermax" prison in Florence, Colorado in 2007.

11. Harrelson's sons, Brett, Jordan, and Woody (the Academy Award nominated actor) have waged a decades long campaign, both in the press and in the courts, to overturn or at least cast doubt on their father's guilt. Woody bankrolled his father's unsuccessful attempt to overturn his conviction in 1997, hiring a legal dream team including Alan Dershowitz. Woody consistently

repeated his belief to reporters that his father's trial was unfair, and that the Federal government had used him as a scapegoat for Judge Wood's assassination, although Woody has softened his views in more recent interviews.

12. However, Charles's two other sons, Brett and Jordan, have picked up the torch and pushed their father's case even thirteen years after his death. They teamed up with a self-described journalist[1] and veteran producer[2] named Jason Cavanagh to create "Son of a Hitman" as a ten-episode podcast produced by High Five Content and distributed by Spotify. Brett even served as the executive producer of the project. The podcast takes itself seriously and styles itself as a true crime podcast reexamining loose threads of a crime for which the wrong man may have been convicted, like the investigative journalism podcast Serial, which won a Peabody Award in 2015.

13. What the podcast actually does is to loosely tell the story of Charles Harrelson's life and crimes while teasing the audience with the never-substantiated possibility that there's more to his story than history knows. But there is never any grand reveal or revelation – just a purposeful muddying of the waters. The host of the podcast seems to purposely avoid actually interviewing many of his sources, preferring to send a private investigator to do the leg work and using semi-scripted conversations between the PI and himself to try to build tension. The host frequently speculates that witnesses were lying during the trial or had hidden motives, or that unknown parties were involved in Judge Wood's murder, without providing any evidence of either. At several

---

[1] "In this multi-part limited series for Spotify, journalist and host Jason Cavanagh conducts a real-time investigation…" *See* https://www.jason-cavanagh.com/son-of-a-hitman. Jason Cavanagh does not appear to have any education, training, or experience as an investigative journalist. *See* https://www.jason-cavanagh.com/resume.

[2] "Jason Cavanagh is a veteran producer with a passion for incredible true stories. Over the past 15 years he's produced hit television series for a range of networks including CBS, History, Discovery, Bravo, MTV, VH1, A&E and PBS. He's covered moonshiners, musicians, bikers, real housewives, scientists, teen moms, comedians, law enforcement and criminals. Son of a Hitman is Cavanagh's first foray into narrative podcasting. He brings his documentary and interviewing skills to uncover answers on a case over 40 years old." *See* https://www.jason-cavanagh.com/about.

points, the host implies to the audience that his work on the podcast is putting him in physical danger, but never tells the audience why or how. Most egregiously, the host almost never attempts to fact-check or confirm any of the statements or conclusions of the interviewees, but is content to let the recorder run and let interviewees say whatever they want without the basic verification that characterizes journalism. At one point, the host lets Jimmy Chagra's two daughters bicker in a bar uninterrupted and unedited for close to five minutes, speculating over whether it was within their father's character to order an assassination. The impression this leaves with the audience is that the truth is ultimately unknowable, not that this was a thoroughly litigated criminal proceeding, upheld twice by the Fifth Court of Appeals, and twice examined by the Supreme Court of the United States. In this way, the podcast is much more akin to the reality TV style of Tiger King rather than the journalistic rigor of Serial.

14. Charles Harrelson's sons have made it clear during the promotion of the podcast that their goal was never an unbiased examination of Judge Wood's murder. In one interview, Brett Harrelson told a reporter, "It's important for me to expose the magnitude of how corrupt this trial was and how my father, Charles Harrelson, didn't receive a fair trial." The involvement and influence of two sons explains the point of view and tone of the podcast and the slanted way it presents the subject matter. The Plaintiff Dr. Parker would never have agreed to be interviewed had she known that Brett and Jordan Harrelson were involved. However, that material piece of information was purposely concealed from her when Jason Cavanagh called her and requested an interview. Dr. Parker was familiar with the Harrelson brothers' crusade to cast doubt on their father's conviction, but didn't know that Jason Cavanagh was working closely with them and didn't know that Brett Harrelson was the Executive Producer of the project. Had she known this material information, she would have accurately predicted that any interview she gave would be

twisted to give the impression Charles Harrelson had been railroaded by the federal government and that her eyewitness testimony was unreliable. The interview with Jason Cavanagh lasted over 90 minutes; he used less than five minutes of it.

15. When the podcast was finally released, the host labeled Dr. Parker as "a very unusual witness," and used that phrase as the title to Episode 6, which featured her interview. He cast her as the "star witness" and focused almost singularly on the fact that the FBI had attempted to use hypnosis to conduct some interviews with her, calling it a "display of questionable judgment." He used only selected portions of her interview to lead the audience to the conclusion that Charles Harrelson's conviction relied on information obtained through her hypnosis, and that Dr. Parker was complicit in a scheme to convict Charles Harrelson with fabricated evidence that should have been inadmissible. This is false. The podcast purposely concealed the fact that none of the interviews Dr. Parker gave under hypnosis were relied on by the prosecution, and that it was Charles Harrelson's defense counsel that elicited the testimony they were discussing in the podcast at that point.

16. The episode similarly implies Dr. Parker's complicity in a scheme to fabricate evidence by stating that the FBI only "found" her after an extensive search for any witnesses, implying that the FBI had become desperate for evidence. This is also false. Jason Cavanagh knew from interviewing Dr. Parker that she had contacted the FBI herself as soon as she learned about the murder of her neighbor, Judge Wood, to report the suspicious man who had purposely bumped into her, and that she gave her first interview to the FBI later that same day. The episode and the podcast as a whole purposely leads the audience to the false conclusion that Dr. Parker, as a young attorney and officer of the Court, was either complicit or actively participated in manufacturing evidence to perpetuate an unfair trial on Charles Harrelson.

17. Jason Cavanagh spoke with one or more former FBI agents who worked on the investigation of Judge Wood's murder. Jason Cavanagh knew from these conversations that his allegations that Dr. Parker was a "found" witness, that she was the "star" witness, and that her statements to the FBI were obtained by hypnosis were all false and baseless. The falsity of these allegations is also confirmed by a review of the trial transcript, a basic task of investigatory research which Jason Cavanagh presumably took as a competent, ethical journalist. The verifiable reality that these allegations are false does not fit with the narrative of Jason Cavanagh's and Brett Harrelson's podcast, and that information was excluded.

18. Dr. Parker, in addition to being an attorney, is a multiply certified healthcare professional with over twenty years of experience as a treating practitioner, clinical researcher, and academic medical educator in the field of post-Traumatic stress disorder. She testifies as an expert witness, helping judges and jurors understand the causes of trauma and its effects on its victims. To be effective in this necessary work, her reputation for honesty and professionalism must remain – literally – unimpeachable. Dr. Parker has already been forced to answer questions in her practice concerning the podcast's fabricated portrayal of her actions, character, and judgment. She has been warned that the podcast's release may lead to her not being hired to testify in some or all cases, costing her employment and depriving the Courts of her expert perspective on trauma. The actions of the Defendants have irrevocably damaged her reputation, and the Defendants have profited and continue to profit off the sensationalist and defamatory presentation of Dr. Parker's interview contained in "Son of a Hitman."

## V. CAUSES OF ACTION

19. **Defamation**. Defendants communicated false and defamatory statements about Plaintiff to third persons with malice and Plaintiff suffered injury as a result. Plaintiff is a private individual,

not in the public eye for any purpose, and the defamatory communication concerned a matter of private concern. Plaintiff is entitled to actual damages, consequential damages, exemplary damages, pre-and post-judgment interest, and court costs. Even if the discrete facts presented by Defendants are literally or substantially true, they were published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way. *See Turner v. KTRK TV Inc.*, 38 S.W.3d 103 (Tex. 2000).

20. **Fraudulent Inducement.** Weeks after the interview, Dr. Parker was contacted and asked to sign a document titled "Talent Appearance Release" in favor of an entity identified as Tradecraft Alternative. Among other reasons, the "release" is unenforceable because it was procured by fraud. Defendants knew that and Jordan Harrelson's involvement in the podcast and Brett Harrelson's position as the executive producer of the podcast was material information and purposely withheld that information from Dr. Parker.

## VI. PRAYER

21. For the foregoing reasons, Plaintiff respectfully requests that requests that upon issuance and service of summons on Defendants, and on final trial of this matter, she obtain judgment against Defendants for all past, present and future economic and noneconomic damages, including exemplary damages, pre-judgment and post-judgment interest as allowed by law, costs of court, costs of suit, and all other relief, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Roy Barrera III
Roy Barrera III
State Bar No. 24028545
RBarrera@thebarrerafirm.com
David A. Harris
State Bar No. 24074366
DHarris@thebarrerafirm.com
**THE BARRERA FIRM**
424 East Nueva
San Antonio, Texas 78205
Telephone: (210) 224-5811
Facsimile: (210) 802-4633
**Attorneys for Plaintiff**