## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CHRYSANTHE PARKER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:21-CV-175-DAE** |
| | § | |
| **SPOTIFY USA, INC., HIGH FIVE** | § | |
| **CONTENT, LLC, TRADECRAFT** | § | |
| **ALTERNATIVE, LLC, and JASON** | § | |
| **CAVANAGH** | § | |
| | § | |
| **Defendants.** | § | |

---

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

---

Laura Lee Prather*
State Bar No. 1623400
laura.prather@hanesboone.com
Catherine Lewis Robb
State Bar No. 24007924
catherine.robb@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:     (512) 867-8400
Facsimile:     (512) 867-8609
*Attorneys for Defendants*

* *Lead Counsel*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................................. 4

    A.   Judge Wood's murder. ............................................................................................. 4

    B.   Plaintiff received significant media attention based on her testimony at the Wood trial. 4

    C.   Creation of the Podcast and interview of Plaintiff. ................................................. 6

    D.   Publication of Podcast. ............................................................................................ 9

    E.   Lambros sues over portrayal in Podcast. ................................................................ 9

III. ARGUMENT AND AUTHORITIES ............................................................................. 10

    A.   Plaintiff has failed to state a plausible defamation claim. ..................................... 11

        1.   The Statements and Implications are substantially true, are not capable of a
            defamatory meaning, or are non-actionable opinion. ................................... 13

        2.   The Manufactured Evidence Implication that Plaintiff alleges is not an objectively
            reasonable interpretation of the Podcast. ...................................................... 18

    B.   The Podcast is privileged as a matter of law. ........................................................ 19

        1.   The Podcast is protected by the fair report privilege. ................................... 19

        2.   The Podcast is protected by the fair comment privilege. .............................. 20

    C.   Plaintiff fails to allege that Defendants acted with actual malice. ....................... 21

    D.   Plaintiff has failed to allege that she has suffered any damages. ......................... 24

    E.   Plaintiff has failed to state a plausible fraudulent inducement claim or plead the claim
        with the heightened particularity required by Rule 9(b). ....................................... 25

        1.   Applicable standard. ...................................................................................... 25

        2.   Plaintiff fails to plead her claim with the necessary heightened particularity. ........ 26

        3.   The Release bars Plaintiff's fraudulent inducement claim. ......................... 27

IV. THE TEXAS CITIZENS PARTICIPATION ACT REQUIRES DISMISSAL OF
    PLAINTIFF'S CLAIMS ................................................................................................ 28

    A.   The TCPA applies to this action. ........................................................................... 28

    B.   Plaintiff cannot meet her burden to avoid dismissal, and Defendants are entitled to
        judgment as a matter of law. ................................................................................... 29

    C.   *Klocke v. Watson* does not preclude application of the TCPA. ............................. 30

    D.   Defendants are entitled to attorneys' fees. ............................................................ 30

V.   CONCLUSION ................................................................................................................ 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................11, 21, 25

*Associated Press v. Cook*,
17 S.W.3d 447 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ...........................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................11

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) ............................................................................26

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2002)...........................................................13, 14, 16, 18

*Berge Helene Ltd. v. GE Oil & Gas, Inc.*,
896 F. Supp. 2d 582 (S.D. Tex. 2012) ..........................................................25, 27

*Biro v. Condé Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013)..................................................................5

*Burch v. Coca-Cola Co.*,
119 F.3d 305 (5th Cir. 1997) ............................................................................16

*Carr v. Brasher*,
776 S.W.2d 567 (Tex. 1989).............................................................................22

*Carroll v. Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) ................................................................3, 25, 27

*Casso v. Brand*,
776 S.W.2d 551 (Tex. 1989)........................................................................22, 23

*Corrosion Prevention Techs, LLC v. Hatle*,
No. 4:20-CV-2201, 2020 WL 6202690 (S.D. Tex. Oct. 22, 2020) ........................24

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975)...........................................................................................19

*Cox Media Group, LLC v. Joselevitz*,
524 S.W.3d 850 (Tex. App.—Houston [14th Dist.] 2017, no pet.)............18, 19, 28

*Curtis Publishing v. Butts*,
388 U.S. 130 (1967)..............................................................................................2

*Dallas Morning News, Inc. v. Hall*,
    579 S.W.3d 370 (Tex. 2019)..................................................................................19, 20

*Dallas Morning News, Inc. v. Tatum*,
    554 S.W.3d 614 (Tex. 2018)..................................................................13, 16, 17, 18

*Diamond Shamrock Ref. & Mktg. Co. v. Mendez*,
    844 S.W.2d 198 (Tex. 1992)............................................................................12

*Franklin v. Daily Holdings, Inc.*,
    135 A.D.3d 87 (N.Y. App. Div. 2015) ...............................................................14

*Freedom Commc'ns, Inc. v. Sotelo*,
    No. 11-05-00336-CV, 2006 WL 1644602 (Tex. App.—Eastland June 15,
    2006, no pet.) .............................................................................................21

*Gertz v. Welch*,
    418 U.S. 323 (1974)......................................................................................23

*Goss v. Houston Cmty. Newspapers*,
    252 S.W.3d 652 (Tex. App.—Houston [14th Dist.] 2008, no pet.).........................19

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)......................................................................................22

*Hearst Corp. v. Skeen*,
    159 S.W.3d 633 (Tex. 2005).......................................................................23, 24

*Herald-Post Publ'g Co., Inc. v. Hill*,
    891 S.W.2d 638 (Tex. 1994)............................................................................20

*Hogan v. Zoanni*,
    No. 18-0944 (Tex. Oct. 2, 2018) .....................................................................12

*Ins. Co. of N. Am. v. Morris*,
    981 S.W.2d 667 (Tex. 1998)............................................................................26

*Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*,
    573 S.W.3d 224 (Tex. 2019)............................................................................27

*Jeanmarie v. United States*,
    242 F.3d 600 (5th Cir. 2001) ..........................................................................11

*Johnson v. Houston Post Co.*,
    807 S.W.2d 613 (Tex. App.—Houston [14th Dist.] 1991, writ denied).................14

*Johnson v. Phillips*,
    526 S.W.3d 529 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)...............15, 17

*Jones v. Kirkstall Rd. Enters., Inc.*,
    No. 05-18-00592-CV, 2020 WL 2059910 (Tex. App.—Dallas Apr. 29, 2020,
    no pet.)(mem. op.) ............................................................................................................26

*KBMT Operating Co., LLC v. Toledo*,
    492 S.W.3d 710 (Tex. 2016) ...............................................................................12, 14, 16

*Kennedy v. Texoma Broadcasters, Inc.*,
    507 S.W.2d 864 (Tex. Civ. App.—Dallas 1974, no writ) ..........................................2

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) ...................................................................................30

*Langston v. Eagle Printing Co.*,
    797 S.W.2d 66 (Tex. App.—Waco 1990, no writ) ...................................................19

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015)(orig. proceeding) ......................................................24

*Maxwell v. Henry*,
    815 F. Supp. 213 (S.D. Tex. 1993) ...............................................................2, 19, 21

*Mercedes-Benz USA, LLC v. Carduco, Inc.*,
    583 S.W.3d 553 (Tex. 2019) .....................................................................................26

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974) ..................................................................................................23

*New Times, Inc. v. Isaacks*,
    146 S.W.3d 144 (Tex. 2004) .....................................................................................13

*Obey v. Frisco Med. Ctr., L.L.P.*,
    No. 4:13-CV-656, 2015 WL 417509 (E.D. Tex. Jan. 30, 2015) ..............................13

*Orozco v. Dallas Morning News, Inc.*,
    975 S.W.2d 392 (Tex. App.—Dallas 1998, no pet.) .................................................26

*Perkins v. Welch*,
    57 S.W.2d 914 (Tex. Civ. App.-San Antonio 1933, no writ) ....................................9

*Peter Scalamandre & Sons, Inc. v. Kaufman*,
    113 F.3d 556 (5th Cir. 1997) ...............................................................................23, 24

*Robertson v. Sw. Bell Yellow Pages, Inc.*,
    190 S.W.3d 899 (Tex. App.—Dallas 2006, no pet.) .................................................16

*Russo v. Conde Nast Publ'ns*,
    806 F. Supp. 603 (E.D. La. 1992) .............................................................................22

*Schlumberger Tech. Corp. v. Swanson*,
   959 S.W.2d 171 (Tex. 1997)..........................................................................27

*Shakeri v. ADT Sec. Servs., Inc.*,
   No. 3:13-CV-2852-D, 2014 WL 5780955 (N.D. Tex. Nov. 6, 2014), *aff'd*, 816
   F.3d 283 (5th Cir. 2016) ..............................................................................27

*Street v. Nat'l Broad. Co.*,
   645 F.2d 1227 (6th Cir. 1981) ......................................................................22

*Sullivan v. Abraham*,
   488 S.W.3d 294 (Tex. 2016)..........................................................................30

*Teel v. Deloitte & Touche LLP*,
   No. 3:15-CV-2593-G, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015)......................13, 16, 18

*Tubbs v. Nicol*,
   675 F. App'x 437 (5th Cir. 2017) ..................................................................11

*Turner v. Wells*,
   879 F.3d 1254 (11th Cir. 2018) ......................................................................5

*U.S. v. Harrelson*,
   754 F.2d 1153 (5th Cir. 1985) ....................................................................2, 15

*Vice v. Kasprzak*,
   318 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)..................................13, 14

*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) ................................................................ *passim*

*WFAA-TV v. McLemore*,
   978 S.W.2d 568 (Tex. 1998)..............................................................3, 12, 21, 22

*U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*,
   417 F.3d 450 (5th Cir. 2005) ........................................................................26

**Statutes**

Texas Civil Practice & Remedies Code §73.002(b)(1)(A).........................................20

Texas Civil Practice & Remedies Code §73.002(b)(2) ...........................................21

Texas Civil Practice & Remedies Code §73.005..................................................12

Texas Civil Practice & Remedies Code §73.005(b) ..............................................16

Texas Citizens Participation Act §§27.001-011 .................................................28

Texas Citizens Participation Act §27.005(b), (c)...............................................29

Texas Citizens Participation Act §27.001(3) ............................................................3, 28

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ...................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ...................................................3, 25, 26, 27

Federal Rule of Civil Procedure Rule 56 ...................................................................30

# I.
## INTRODUCTION

This lawsuit arises from a multi-part, limited series podcast titled "Son of a Hitman" (the "Podcast")[1] that examines the life of womanizer, gambler, and notorious hitman Charles Harrelson ("Harrelson"). Harrelson—who happens to be the father of actor Woody Harrelson—once claimed to have been involved in the JFK assassination and, most famously, was convicted for the murder of United States District Court Judge John Wood, Jr. — the first assassination of a sitting federal judge in the 20th century. The Podcast is a journalistic exploration of the Wood assassination and the concomitant larger threats to the American judicial system, Harrelson's criminal activities, and problems in the criminal justice system more broadly.

Plaintiff Chrys Lambros Parker ("Plaintiff" or "Lambros"),[2] a self-described "principal witness" in the Wood murder trial and the only eyewitness to place Harrelson at the scene of the murder,[3] was one of dozens of individuals who appeared in the Podcast. Now, unhappy with her portrayal in the Podcast– seemingly taking issue with benign statements she herself admitted in the Podcast are true, such as her characterization as a "star" witness or the fact that the FBI "found" her as a witness--Lambros filed this action against the host Jason Cavanagh ("Cavanagh"), producers Tradecraft Alternative LLC ("Tradecraft") and High Five Content LLC ("High Five"), and distributor Spotify USA Inc. ("Spotify")(collectively, "Defendants") for defamation and

---

[1] Certified transcripts of the Podcast episodes in which Lambros appears or is actively discussed, Episodes 6, 7, 9 and 10, are attached as Exhibit A. The entire Podcast is available on Spotify at https://open.spotify.com/show/1TFCQbI94uvSlSV6Vi0zve (last visited Apr. 19, 2021). The Court may properly consider documents that are "referred to in the complaint and are central to the plaintiff's claims." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)(affirming dismissal of defamation claims when magistrate judge reviewed each article in total). Plaintiff's claims concern the Podcast and may properly be considered by this Court.

[2] Although Plaintiff now goes by her married name of Chrys Parker, she is referred to in the Podcast as Chrys Lambros, her name at the time of the Judge Wood murder and trial. In some media reports, she is also referred to as Chrys Andros.

[3] *See* Ex. A, Ep. 7, 3:1-2; Ex. B, Pt. 1, 16:1-15.

fraudulent inducement. Though Lambros never clearly identifies what statements from the Podcast she is challenging, she generally alleges that the Podcast defamed her by discussing her involvement in the Harrelson case including her role in providing key eyewitness testimony, some of which was elicited while under hypnosis, and her assistance to the prosecution—again all things Lambros herself acknowledges actually occurred and are true. *See also U.S. v. Harrelson*, 754 F.2d 1153, 1179 n.26, 1180 n.28 (5th Cir. 1985)(discussing that Plaintiff was hypnotized in June 1979 and, later that year, identified Harrelson, and that videotape of her hypnotic session was played to the jury). Lambros, a licensed attorney, also alleges she was fraudulently induced into signing an appearance release that she would not have signed had she known that Harrelson's sons were involved in the Podcast. Both of these claims must be dismissed.

First, Plaintiff's defamation claim fails because she makes no attempt to plead the appropriate standard of fault: actual malice. Because Plaintiff is a public figure and because the Podcast is about an ongoing matter of public concern, in order to state a defamation claim, Plaintiff is required to plead actual malice but fails to do so. *See e.g., Curtis Publishing v. Butts,* 388 U.S. 130 (1967) (applying actual malice to public figure defamation case); *Kennedy v. Texoma Broadcasters, Inc.*, 507 S.W.2d 864, 867 (Tex. Civ. App.—Dallas 1974, no writ) (applying actual malice standard when publication was about matter of public concern); TEX. CIV. PRAC. REM. CODE ("CPRC") § 73.002 (requiring actual malice to overcome privilege in commenting on matters of public concern). This failure alone warrants dismissal. *Walker*, 938 F.3d at 744 (affirming 12(b)(6) dismissal of defamation claim when plaintiff failed to adequately allege actual malice); *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993)(dismissing limited purpose public figure's defamation claim because he did not plead actual malice).

Plaintiff's defamation claim must be dismissed for several other reasons. She bears the burden to plead (and ultimately prove) that each and every statement she challenges is a

substantially false and defamatory statement of fact and that she suffered damages as a result of the alleged defamation. *See WFAA-TV v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). But she fails on all counts. The statements at issue are substantially true, not defamatory, non-actionable statements of opinion, or otherwise privileged. *See* Appendix (chart of statements and implications and basis for dismissal of each). And Plaintiff fails to plead damages with the requisite specificity.

Plaintiff's claim for fraudulent inducement--a thinly-veiled attempt to preempt any affirmative defense based on the Release that Plaintiff executed--is equally flawed. She has failed to plead two essential elements of her claim with the heightened particularity required by Rule 9(b): that Defendants had a duty to disclose information to her and that she suffered damages. *See, e.g.*, *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006). This claim must be dismissed.

Finally, to the extent that any of Plaintiff's claims survive Defendants' Rule 12(b)(6) or Rule 9(b) motions, the claims nonetheless must be dismissed under Chapter 27 of the Texas Civil Practice & Remedies Code (the "TCPA").[4] The Podcast addresses issues of public concern including the highly publicized assassination of a federal judge—and it's production and publication thus involve the exercise of Defendants' right of free speech and fall within the purview of the TCPA. TCPA §27.001(3). To survive a TCPA motion, Plaintiff must establish a *prima facie* case for each of her claims by clear and specific evidence. *Id.* §27.005(c). *But* Plaintiff cannot meet this burden and Defendants can establish multiple defenses as a matter of law. Thus, Defendants are entitled to dismissal of all of Plaintiff's claims and a mandatory award of attorney's fees expended in defending against this baseless lawsuit. *Id.* §27.005(d); §27.009(a).

---

[4] The TCPA was recently amended to remove the "preponderance of evidence" standard that precluded the prior version's applicability in federal court. Without that infirmity, the substantive protections in the new version of the TCPA – effective September 1, 2019 and applicable in this case – should be applied herein. *See* Section ("Sec.") IV., *infra*.

## II.
## STATEMENT OF FACTS

**A.      Judge Wood's murder.**

On the morning of May 29, 1979, United States District Judge John H. Wood, Jr. known as "Maximum John" for his harsh sentencing of drug traffickers and after whom this courthouse is named—was murdered outside of his townhouse in San Antonio, Texas as he was preparing to leave for work. Judge Wood was fixing his wife's flat tire when a bullet from an assassin's high-power rifle hit him in the back and lodged in his chest. He was pronounced dead on arrival at a nearby hospital a short time later.  The Wood assassination was the first murder of a federal judge in more than a century and was widely considered an assault on the judiciary.

After a lengthy, multi-year investigation, Harrelson was arrested for the Wood murder. At trial, witnesses testified that drug lord, Jimmy Chagra, who was on trial in front of Judge Wood on drug charges, had paid Harrelson $250,000 to assassinate the Judge. Lambros played a key role at the Wood trial – or, as she put it, was "a principal witness in the case" –  because  she  was  the only eyewitness to place Harrelson at the scene of the crime. After an 11-week trial, Harrelson was convicted and sentenced to two consecutive life sentences plus five years. Although Harrelson filed two appeals, both were unsuccessful, and he died in prison in 2007.

**B.      Plaintiff received significant media attention based on her testimony at the Wood trial.**

Lambros was a young lawyer at the time of the Wood murder and a neighbor of Judge Wood's at the Chateau Dijon condominium complex. She was also the only person who saw Harrelson at Judge Wood's condominium complex on the morning of the murder, literally running

into him as she was leaving the Chateau Dijon.[5] Lambros was eventually able to identify Harrelson to the FBI as the man she saw, and she was called to testify against him at his murder trial.

As Lambros later told Cavanagh when he interviewed her for the Podcast,[6] she has received significant media attention in connection with her eyewitness testimony at the Wood trial—or, as she described it, "the trial of the century." Ex. B, Pt. 2, 38:9-13. The media zeroed in on Lambros for two reasons: she was the only eyewitness to place Harrelson at the scene of the crime and some of her testimony (testimony that was later admitted at trial) was elicited through the use of hypnosis. Ex. A, Ep. 6, 15:3-8. According to Lambros, the press were "like paparazzi" and "[r]eporters from all over the country" were sent to cover the trial. Ex. B, Pt. 1, 58:21-23; 84:19-21. Several news outlets covered Lambros's trial testimony, including international news wires, UPI and AP, and the *New York Times*.[7] As Lambros later told Cavanagh, her picture appeared in a national news magazine and was featured twice on the front page of the *San Antonio Light* newspaper, she was recognized in airports, and the FBI even gave her a "newspaper clippings" file

---

[5] Lambros said that Harrelson "bump[ed]" her "so that [she wouldn't] get a glimpse of him," and that she "immediately identified him as being a stranger to the area[.]" Ex. A, Ep. 6, 13:19-24; Ex. B, Pt. 1, 16:1-15.

[6] A certified transcript of the entire interview, which Lambros refers to in her Complaint, is attached as Exhibit B. The interview with Cavanagh is central to Lambros' claim because she alleges that Defendants "used only selected portions of her interview" to defame her, complaining Defendants used only 5 minutes of the lengthy interview in the Podcast. *See* Compl. ¶¶ 14-15. Thus, the Court may properly consider it. *See, e.g., Walker*, 938 F.3d at 735.

[7] A sampling of the media mentions is attached as Exhibit C to the Motion for the Court's convenience. *See also* UPI NEWS, *A lawyer who was hypnotized to remember details testified* (Oct.11, 1982), https://www.upi.com/Archives/1982/10/11/A-lawyer-who-was-hypnotized-to-remember-details-testified/9864403156800/ (last visited Apr. 19, 2021); NEW YORK TIMES, *Witness Places Defendant at Scene of Murder of Federal Judge* (Oct. 12, 1982), https://www.nytimes.com/1982/10/12/us/witness-places-defendant-at-scene-of-murder-of-federal-judge.html (last visited Apr. 19, 2021). The Court may take judicial notice of publicly available media coverage to show the extent of media attention that Plaintiff receives. *Turner v. Wells*, 879 F.3d 1254, 1272. n.5 (11th Cir. 2018)("In determining Coach Turner's public figure status, we take judicial notice of the existence of videos produced or articles written about Coach Turner."); *see also Biro v. Condé Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013).

---

of her numerous media mentions.[8]

Lambros, a well-established attorney and therapist and the author of several books, has appeared in three documentaries, has served as an expert witness many times, and will soon have a public access show.[9] Since the time of the trial, Lambros has not shied away from her role in the Wood murder trial, and instead has actively fostered the public awareness of it, appearing in at least two documentaries, including a recreation of the murder that Lambros said became the series pilot of *FBI: The Untold Stories.*[10]

## C.   Creation of the Podcast and interview of Plaintiff.

Due to the continuing interest in the controversy the concept for a Podcast exploring Harrelson's criminal past with a focus on his role in the Wood assassination was developed. In 2019, Cavanagh began interviewing people connected to Harrelson for the Podcast. One of those people was Lambros, who spoke with Cavanagh for over two hours about her involvement in the Wood murder investigation and trial. During the interview, Lambros told Cavanagh (and he included in the Podcast) that on the morning Judge Wood was murdered, upon hearing that he had been shot, she "headed for the phone and instantly called the FBI" and "they immediately asked [her] to come in" to give a report. *See* Ex. A, Ep. 6, 14:4-6. Although Lambros initially described the man she saw and worked extensively with the FBI to create a picture of him, "it didn't quite

---

[8] Ex. B, Pt. 1, 33:2-8 (national news magazine), 33:4-6 (airports), 34:7-12 (newspaper clippings), 58:1-59:10 (*San Antonio Light*); *see also id.* at 84:16-21 ("And oh, my goodness, there was such publicity from everywhere. It wasn't just [] a hometown deal. I mean, reporters from all over the country were sent to cover this."); 85:22-24 ("[E]verybody knew about it. …It was just – it was in the public domain.").

[9] *See* Clarence L. Sims (author), Chrysanthe L. Parker (Preface), <u>Reflections on Spirituality in Pastoral Psychotherapy</u> (Resource, 2013); Dr. Harry A. Croft, MD and Rev. Chrys L. Parker, JD, <u>I Always Sit With My Back To The Wall: Managing Traumatic Stress and Combat PTSD</u> (Stillpoint Media Services, Mar. 2011); PBS, "*Close To Home: Changed by War*" (Oct. 2017), https://www.wlvt.org/blogs/pbs39-close-to-home/pbs39-close-to-home-changed-by-war/ (last visited Apr. 19, 2021.); Ex. B, Pt. 1, 2:8-13 (Lambros talking about her forthcoming show).

[10] Ex. A, Ep. 6, 11:9-12:10 ("[T]his is the second documentary that I have been in."); Ex. B, Pt. 1, 5:9-6:20 (describing the Podcast as her third documentary).

---

come together and the next step was for [her] to start working with the hypnotist." *Id.* at 14:15-18.

According to Lambros, the FBI decided to hypnotize her to see if she could remember any additional details, putting her under oath and recording her session with a hypnotherapist, (Ex. B, Pt. 1, 28:18-29:20, 30:16-31:1-22) where she "related the details that [she] consciously recalled about his appearance … [and] other details that were apparently more definitive and more descriptive than [her] prior interviews had been." *Id.* at 30:24-31:9. Once "the FBI sketch artist had much more to work with" he was able to draw a sketch of the suspect, which, after some time, looked like the man Lambros remembered seeing the morning of Judge Wood's assassination. *Id.* at 31:10-22. Lambros stated that she was later presented with a photo array and then a police lineup, where—in both instances—she identified Harrelson. *Id.* at 39:4-12, 42:18-43:7.

Discussing this with Cavanagh, Lambros agreed that the FBI's decision to hypnotize her was controversial.[11] *See* Ex. A, Ep. 6, 15:3-8 ("I know it hadn't been done before. I don't know if it's been done since."); Ex. B, Pt. 1, 78:24-80:12. And she agreed that testimony elicited through hypnosis would likely not be admissible today and stated that "the admissibility was stretched to its absolute limits" (Ex. A, Ep. 6, 15:11-14, 18-19), explaining the tremendous need and desperation the FBI had for information ("I have no idea what made them decide, well, let's hypnotize this girl …you know, there was just such a need …they were so desperate to find

---

[11] The use of hypnosis to obtain testimony remains controversial today. The Texas legislature is currently considering whether to ban the use of testimony elicited through hypnosis in criminal proceedings. *See, e.g.,* Lauren McGaughy, *Committees approve legislation aimed at ending use of hypnotically-refreshed testimony in Texas courts*, THE DALLAS MORNING NEWS, Mar. 29, 2021, https://www.dallasnews.com/news/investigations/2021/03/29/should-police-use-hypnosis-in-criminal-investigations-texas-lawmakers-debate-trance-testimony-this-week/; https://capitol.texas.gov/BillLookup/History.aspx?LegSess=87R&Bill=SB281. Indeed, there is much public debate about the reliability of eyewitness testimony in general. *See* Ex. A, Ep. 10, 51:9-24. *See also e.g.,* THE INNOCENCE PROJECT, *How Eyewitness Misidentification Can Send Innocent People to Prison* (Apr. 15, 2020), https://innocenceproject.org/how-eyewitness-misidentification-can-send-innocent-people-to-prison/; *Eyewitness Identification Reform* https://innocenceproject.org/eyewitness-identification-reform/ (last visited Apr. 19, 2021).

information."). Ex. B, Pt. 1, 86:10-18; 90: 9-11.

Lambros related to Cavanagh the high-profile nature of the killing and the criminal proceedings in detail. And she described the continued interest in the case, recounting her participation in an earlier documentary about the murder and the trial that became the premier episode of *FBI: The Untold Stories*. Ex. B, Pt. 1, 6:17-7:3, 9:16-10:18. Lambros even claimed that Academy Award winner Christopher Walken had directed the episode, a fact that Cavanagh later sought to confirm in hopes of getting Walken to participate in the Podcast. *See* Ex. A, Ep. 6, 11:9-12:19; Ex. B, Pt. 1, 5:9-6:20, 8:5-10:18. Cavanagh found no evidence confirming Lambros' claim, and Walken's representatives and others involved in the documentary denied that he participated in the episode. *Id.* at 37:7-24; Ep. 7, 2:22-25; Ep. 10, 51:21-53:3. When Cavanagh later asked Lambros about this inconsistency, she doubled down on her conviction that Walken had directed, stating "I really don't feel any confusion whatsoever. It's sort of like, yup, it's Harrelson, and I was sure, it's Walken, and I was sure." *See* Ex. A, Ep. 7, 18:4-6.

The initial interview with Lambros lasted a little over two hours,[12] and she and Cavanagh discussed the fact the interview would be edited for the Podcast. *See* Ex. B, Pt. 1, 15:10-17. Cavanagh also openly told Lambros he was exploring all sides of the case (not only the prosecution's), and speaking to many people, specifically mentioning the children of Jimmy Chagra. *Id.* at Pt. 2, 17:8-19:3.

At the end of interview, Cavanagh presented Lambros with a two-page Talent Appearance Release (the "Release") to sign (Exhibit D), which Lambros—a licensed attorney—executed that same day. *See* Affidavit of Jason Cavanagh (Exhibit E). The Release gave Defendants a "license (but not the obligation) to … use [Lambros'] likeness, voice, name, persona and performance" in

---

[12] Cavanagh also had a short follow up call with Lambros concerning the Walken issue to allow Lambros to clarify her recollection, if she wanted. *See* Ex. A, Ep. 7, 15:16-18:21.

the Podcast. *See* Ex. D, p. 1. [13]

**D.     Publication of Podcast.**

Ten episodes of *Son of a Hitman* streamed on Spotify, starting on May 5, 2020, with the final episode released on July 7, 2020. The Podcast was produced by Tradecraft and High Five and explores the three murders, including Judge Wood, that Harrelson was charged with committing and also Harrelson's claim he was involved in the JFK assassination. While acknowledging that Harrelson was found guilty of the Wood murder (a killing he denied committing until he died), the Podcast raises questions about some of the evidence admitted at the Wood trial. Although Lambros' voice is heard briefly in prior episodes, she is not identified and does not actively appear until Episode 6, titled, "A Very Unusual Witness." The title, like that of all episodes, came from a quote used in the episode—in that instance, a statement by prosecutor, Ray Jahn, characterizing Lambros as a "[v]ery unusual witness and very, very effective witness." *See* Ex. A, Ep. 6, 10:21-22.

**E.     Lambros sues over portrayal in Podcast.**

On February 24, 2021, Plaintiff sued for defamation and fraudulent inducement. In her Complaint, Plaintiff takes issue with the manner in which she was portrayed in the Podcast[14] but never identifies the specific statements in the Podcast that she alleges are false and defamatory, which is required under Texas Law.[15]

---

[13] Lambros' fraudulent inducement claim is based on her execution of this Release; therefore, the Court may consider it. *See Walker*, 938 F.3d at 735.

[14] Plaintiff essentially claims she was portrayed in a "false light."  But the Release bars Plaintiff from bringing a false light claim, and false light invasion of privacy has not been a cognizable claim in Texas since 1994. See Cain v. Heart Corp., 878 W.2d 577, 580 (Tex. 1994); Ex. D, Release at 1. Plaintiff's claim is merely an attempt to creatively (and inappropriately) plead around the issue by bringing a meritless defamation claim.

[15] Under Texas law, allegations of defamation must be set out in *haec verba* (*i.e.*, "in these words"), meaning Plaintiff must quote the allegedly defamatory statements "or at least the particular portion or portions thereof charged to the libelous," in order to avoid dismissal. *See Perkins v. Welch*, 57

Still, in an effort to address Plaintiff's allegations, Defendants have surmised the following statements and alleged implications from the Podcast that appear to be at issue:

- <u>Statement 1</u>: The FBI "found" Plaintiff as a witness. ("**Stmt 1 – Found Statement**") *See* Compl. ¶¶ 16, 17.

- <u>Statement 2</u>: Plaintiff was the "star" witness. ("**Stmt 2 – Star Witness Statement**") *See* Compl. ¶ 17.

- <u>Statement 3</u>: Some of her statements to the FBI were obtained by hypnosis. ("**Stmt 3 – Hypnosis Statement**") *See id.*

- <u>Statement 4</u>: The title of the episode in which she was featured (Episode 6) "A Very Unusual Witness." ("**Stmt 4 – Unusual Witness Statement**") *See* Compl. ¶ 15.

- <u>Implication 1</u>: Harrelson's conviction relied on information obtained through Plaintiff's hypnosis. ("**Imp. 1 – Conviction Implication**") *See* Compl. ¶ 15.

- <u>Implication 2</u>: Her eyewitness testimony was unreliable. ("**Imp. 2 – Unreliable Eyewitness Implication**") *See* Compl. ¶ 14.

- <u>Implication 3</u>: She was "either complicit or actively participated in manufacturing evidence to perpetuate an unfair trial on Charles Harrelson." ("**Imp. 3 – Manufactured Evidence Implication**") *See* Compl. ¶ 16.

For ease of consideration, Defendants have attached as an Appendix a chart addressing each of these statements and implications and why the relief sought cannot be granted. *See* Appendix.

Plaintiff also alleges that she was fraudulently induced to sign the Release. Specifically, she alleges that she would have never signed the Release or agreed to appear in the Podcast if Cavanagh had told her that Harrelson's sons were involved in the production. Compl. ¶¶ 14, 20.

### III.
### <u>ARGUMENT AND AUTHORITIES</u>

Plaintiff has failed to state a claim for defamation or fraudulent inducement, and, as a result, her Complaint should be dismissed pursuant to Federal Rule of Civil Procedure ("FRCP" or "Rule") 12(b)(6). "[A] Plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

---

S.W.2d 914, 914-15 (Tex. Civ. App.-San Antonio 1933, no writ). Plaintiff fails to do so here. This error is fatal to her claim and warrants dismissal on that basis alone.

action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)(internal citations omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level" (*id.*), which Plaintiff's Complaint fails to do. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

With respect to Plaintiff's defamation claim, none of the statements or implications she appears to challenge is actionable as a matter of law. The statements and implications at issue are all either substantially true, not capable of defamatory meaning, statements of opinion protected by the First Amendment, or simply cannot be interpreted in the unreasonable way Plaintiff reads them. In addition, Plaintiff does not sufficiently plead an essential element of her claim: fault. As a limited purpose public figure--indeed Plaintiff is the self-described "principal witness" in the Wood case and continues to speak publicly about the case to this day--Plaintiff was required to plead actual malice. But her only attempt to plead fault is a conclusory allegation that Defendants acted with "malice" (a standard that does not even apply here) and must be disregarded. *Twombly*, 550 U.S. 544 (2007); *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001). Other than this conclusory allegation, the only allegations that arguably touch upon any defendant's state of mind in publishing the Podcast do not and cannot rise to the level of actual malice.

Plaintiff's fraudulent inducement claims fares no better. Her allegations fall far short of meeting the heightened Rule 9(b) pleading standard applicable to fraud claims. This claim must be dismissed as well.

## A.   Plaintiff has failed to state a plausible defamation claim.[16]

---

[16] Plaintiff has failed to comply with the Defamation Mitigation Act ("DMA"), which is alone enough to bar her claims. *See* CPRC §73.055(a)(1)("[a] person may maintain an action for defamation only if … [she] has made a timely and sufficient request for a correction, clarification, or retraction."); *Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017)(plaintiff's claim fails as a matter of law under the Texas DMA because she failed to request a modification or retraction prior to filing suit). There is currently a split of authority among Texas' intermediate appellate courts as to whether failure to comply with the DMA is a complete bar to litigation or just a preclusion of

In Texas, "the defamation action has been narrowly tailored to limit free speech as little as possible." *Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 210 (Tex. 1992). "To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement;[17] (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV*, 978 S.W.2d at 571.

Where, as here, the allegedly defamatory statements are made by a media defendant regarding a matter of public concern, the plaintiff bears the burden to establish falsity. *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 713-14 (Tex. 2016). Substantially true statements are not actionable. As the *Walker* court recognized, "Texas has adopted the substantial-truth doctrine, under which a plaintiff is precluded from recovery when a 'publication ... correctly conveys a story's 'gist' or 'sting' although erring in the details.'" 938 F.3d at 743 (citation omitted); CPRC §73.005; *see, e.g.*, *Associated Press v. Cook*, 17 S.W.3d 447, 456 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (statement of belief that plaintiff committed perjury was substantially true even though plaintiff was never indicted because evidence showed that plaintiff misstated the contents of telephone records while under oath). In other words, a statement need not be perfectly true; as long as it is substantially true, it is not false. *See Walker*, 938 F.3d at 743.

Plaintiffs also must establish that the challenged statements are defamatory. A statement is defamatory "if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Id.*; CPRC §73.001. Whether a statement is "reasonably capable of a defamatory

---

recovery of exemplary damages. The issue is pending before the Texas Supreme Court. *See Hogan v. Zoanni*, No. 18-0944 (Tex. Oct. 2, 2018).

[17] Plaintiff makes no allegation that Tradecraft engaged in any conduct relevant to the publication. Thus, the defamation claim against Tradecraft should be dismissed forthwith.

meaning" is a question of law, and the Court must focus on how the statement would be interpreted by an "objectively reasonable reader." *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624, 631 (Tex. 2018). A plaintiff's "own characterization of the allegedly defamatory statements cannot form the basis for a defamation suit." *Vice v. Kasprzak*, 318 S.W.3d 1, 20-21 (Tex. App.— Houston [1st Dist.] 2009, pet. denied). Similarly, "[a] statement may be false, abusive, unpleasant or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances." *Obey v. Frisco Med. Ctr., L.L.P.*, No. 4:13-CV-656, 2015 WL 417509, at *3 (E.D. Tex. Jan. 30, 2015).

Expressions of opinion are also not actionable. *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *4 (N.D. Tex. Dec. 29, 2015). "[S]tatements that are not verifiable as false are not defamatory. And even when a statement is verifiable, it cannot give rise to liability if the entire context in which it was made discloses that it was not intended to assert a fact." *Tatum*, 554 S.W.3d at 638 (internal quotations and citation omitted). *See also Bentley v. Bunton*, 94 S.W.3d 561, 579-80 (Tex. 2002)(statements that cannot reasonably be interpreted as stating verifiable facts are constitutionally protected.). A statement that simply interprets disclosed facts is non-actionable opinion. *See Tatum*, 554 S.W.3d at 639-40. Finally, challenged statements are construed as a whole based upon a reasonable person's (not Plaintiff's) perception of them. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004); *Vice*, 318 S.W.3d at 20-21.

1.   **The Statements and Implications are substantially true, are not capable of a defamatory meaning, or are non-actionable opinion.**

Plaintiff has not articulated a viable defamation claim because all of the Statements and Implications are either substantially true, not capable of a defamatory meaning, or non-actionable opinion.

**Stmt 1 – Found Statement** – The statement that the FBI "found" Plaintiff as a witness is substantially true, *see* Ex. A, Ep. 6, 14:4-5 (Parker saying she immediately went into the FBI, thus

allowing them to "find" her), and not capable of defamatory meaning. It merely refers to the fact that, as with any criminal investigation, the FBI hoped to find witnesses with relevant information and here did so through Plaintiff. *See Toledo*, 492 S.W.3d at 713-14. Moreover, shortly after this statement, the Podcast includes an excerpt from Plaintiff's interview in which she states that she voluntarily called the FBI on the same day as the murder to report what she had seen. *See* Ex. A, Ep. 6, 14:4-6. Viewed in context, no ordinary listener would draw the conclusion Plaintiff appears to allege this statement creates–that the FBI was desperate for evidence when they spoke to Lambros.[18] *See Bentley*, 94 S.W.3d at 579 ("[T]he meaning of a publication and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements.").

**Stmt 2 – Star Witness Statement** – The statement that Plaintiff was a "star" witness is also substantially true and not defamatory. In fact, Plaintiff talks extensively in the Podcast about the importance of her testimony and even *describes herself* as "a principal witness in the case." *See* Ex. A, Ep. 7, 3:1-2; *see also id.* at Ep. 6, 12:24-13:2. For example, in Episode 6 she states:

> [O]ver time I became aware that I was the only witness whose particular location pinpointed the exact point in time of when [Harrelson] was where he was…. [T]hat one small second of time played such a significant role in identifying him as the hitman.

Ex. A, Ep. 6, 34:16-22; *see also id.* at 26:10-14. Moreover, characterizing Plaintiff as a "star" witness is not defamatory; it is merely a descriptive term that does not injure Plaintiff's reputation or expose her to public hatred, contempt or ridicule. *See, e.g.*, *Johnson v. Houston Post Co.*, 807 S.W.2d 613, 615 (Tex. App.—Houston [14th Dist.] 1991, writ denied)(description of plaintiff as "militant speaker" was not defamatory: "simply placing the word militant in front of speaker does not make the statement defamatory"); *see also Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87,

---

[18] Interestingly, Plaintiff herself described the FBI's desperation, in the context of choosing hypnosis. *See* Ex. B, Pt. 1, 86:10-18; 90:9-11 ("[T]hey were so desperate to find information.")

92 (N.Y. App. Div. 2015)(implying that plaintiff was a witness to a crime was not defamatory). And, to the extent, the statement is not a verifiable fact, but instead, an opinion characterizing Plaintiff's role at Harrelson's trial, it is not only not actionable, but is consistent with how she described her own role as "a principal witness in the case."[19] *See Johnson v. Phillips*, 526 S.W.3d 529, 538 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)("[A] defendant cannot be liable for presenting his opinions about … a trial.").

**Stmt 3 – Hypnosis Statement** – Plaintiff complains that the Podcast (truthfully) says the FBI interviewed her under hypnosis. Compl. ¶ 17. But Plaintiff herself acknowledges that this is true. She admits she was put under hypnosis and interviewed by the FBI (Ex. A, Ep. 6, 14:16-18) and that the tape of her hypnosis was played at the trial. *See* Ex. A, Ep. 7, 3:3-6; *see also U.S. v. Harrelson*, 754 F.2d 1153, 1179 n.26, 1180 n.28 (5th Cir. 1985)(discussing that Plaintiff was hypnotized in June 1979 and, later that year, identified Harrelson, and that videotape of her hypnotic session was played to the jury). Thus, she cannot now claim that the statement is anything but true. And even if the statement were false, it is still not actionable because it is not capable of a defamatory meaning. Any defamatory implication about Plaintiff being put under hypnosis is not defamatory as to her, and at most, suggests that the FBI pursued unconventional investigative tactics, a fact Lambros again admits. *See* Ex. A, Ep. 6, 14:19-20.

**Stmt 4 – Unusual Witness Statement** – Finally, Plaintiff complains about the title of Episode 6, "A Very Unusual Witness." This statement is not actionable for three independent reasons. First, it is protected statement of opinion. The title of the episode is taken from a statement by prosecutor Ray Jahn, who described Plaintiff as "a very unusual witness". (Ex. A, Ep. 6, 10:21-22). This statement is Jahn's subjective characterization and cannot be proven true or false. *See*

---

[19] Ex. A, Ep. 7, 3:1-2; *see also* Ep. 6, 26:10-14 ("I was quite sure about my identification. … And I knew that because I was sure, some big ass prosecution was going to result.").

*Bentley*, 94 S.W.3d at 579-80. Second, the Unusual Witness Statement is substantially true. Plaintiff readily admits that the use of hypnosis to obtain a witness identification has rarely been used in criminal trials and that, as far as she knows, the Wood trial "was the first time in American jurisprudence that kind of evidence had been admitted" – which necessarily makes her testimony unusual. Ex. A., Ep. 7, 3:3-6. Plaintiff also admits she was in a unique position as the only person to see Harrelson at the scene of the crime. Ex. A, Ep. 6, at 12:24-13:2. Therefore, the statement is both an accurate description of Plaintiff as a witness and substantially true as an accurate report of a third-party statement on a matter of public concern. *See* CPRC §73.005(b); *KBMT*, 492 S.W.3d at 711. Finally, there is nothing defamatory about the use of the term—"unusual." Such vague descriptions are not defamatory. *Burch v. Coca-Cola Co.*, 119 F.3d 305, 326 (5th Cir. 1997)(holding that the statement at issue was not defamatory given, in part, the "vague and general nature" of it).

**Imp. 1 – Conviction Implication** – The implication that Harrelson's conviction relied on information obtained through Plaintiff's hypnosis is an unverifiable fact because no one knows what, specifically, the jury relied on in convicting Harrelson. In addition, Plaintiff admitted that the tape of her under hypnosis was admitted at the trial. Ex. A, Ep. 7, 3:3-6. Finally, even if provable as true or false, the fact a jury relied on eyewitness testimony is not defamatory. This purported implication cannot form the basis of Plaintiff's claim. *See Tatum*, 554 S.W.3d at 638.

**Imp. 2 – Unreliable Eyewitness Implication** – Whether Plaintiff's testimony was reliable is Cavanagh's nonactionable opinion. *See Teel*, 2015 WL 9478187, at *7 (statements that plaintiff "was unreliable" and "could not be trusted" were nonactionable opinion); *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.)(statement implying that the plaintiff was "incompetent" was nonactionable opinion). Moreover, Cavanagh provides the bases for his opinion in the Podcast. As the Texas Supreme Court discussed in *Tatum*, a

statement that simply interprets disclosed facts, like the statement here, is an opinion, which cannot form the basis of a defamation claim. 554 S.W.3d at 639-40; *see also Johnson*, 526 S.W.3d at 538.

First, Cavanagh explains that he began to question Plaintiff's memory after he learned that Christopher Walken did not direct the previous documentary in which Plaintiff appeared. Cavanagh explains that Plaintiff's insistence that Walken had directed the documentary planted "a seed of doubt *in my own mind*" regarding her trial testimony.[20] Tellingly, Plaintiff does not dispute that she misidentified Walken as the director of the previous documentary—in fact, she does not even mention this significant topic in her Complaint. Second, Cavanagh expresses *his* general concerns about the use of hypnosis testimony in criminal proceedings and the fact that such evidence would not hold up in court today, an opinion Plaintiff shares.[21] *See* Ex. A, Ep. 6, 15:3-14 (Plaintiff, discussing using such evidence today: "[T]oday, oh my God. I mean, you'd never (laughter)."); *see also* Ep. 7, 3:3-6. Finally, Cavanagh discusses studies from the Innocence Project that reveal the inherent unreliability of eyewitness testimony. *See* Ex. A, Ep. 10, 51:9-24; THE INNOCENCE PROJECT (*supra*, fn. 12); *see also* Ex. A, Ep. 10, 51:5-8. Thus, Cavanagh thoughtfully explains why he questions the reliability of Plaintiff's testimony, and this opinion cannot support a defamation claim. *See Tatum*, 554 S.W.3d at 639-40; *see also Johnson*, 526 S.W.3d at 538.

---

[20] *See* Ex. A, Ep. 7, 4:5-19, 15:16-23, 18:23-19:4. *See also* Ep. 6, 37:25-38:5 ("This seems like an unusual mistake for Chrys Lambros to make, and I'm not sure how I feel about it. … I can't help but ask myself, was Chrys Lambros … an unreliable witness?"); Ep. 9, 12:14-20 ([Cavanagh] Responding to the question, do you really think she saw him (Harrelson), "It's interesting. I believe her. And I certainly believed her when I was speaking to her. But she told me a couple things that were questionable, that made me question that."); Ep. 10, 51:3-4 ("[Regarding Walken directing] I don't think she's lying. I think that her memory was faulty.").

[21] Ex. A, Ep. 6, 14:19-20 ("In a display of questionable judgment, the FBI had Chrys Lambros hypnotized …"); *see also* Ep. 1, 19:22-20:1 (time) ("[Evidence the FBI acquired through hypnotizing Plaintiff] would never hold up in court today. In fact, just a month before the Judge Wood trial began, the [California] Supreme Court ruled that hypnotically-enhanced testimony was not admissible evidence.").

Accordingly, the foregoing Statements and Implications are either substantially true, are not defamatory, or are protected statements of opinion, and if they serve as the basis for Plaintiff's defamation claim, she has failed to state a claim for relief. *See Teel*, 2015 WL 9478187, at *7.

**2.       The Manufactured Evidence Implication that Plaintiff alleges is not an objectively reasonable interpretation of the Podcast.**

Plaintiff's final alleged implication, that the Podcast implies she was complicit in or actively participated in manufacturing evidence to perpetuate an unfair trial on Harrelson (**Imp. 3 – Manufactured Evidence Implication**), is not an objectively reasonable interpretation of the Podcast. *See Tatum*, 554 S.W.3d at 631. Whether the implication that Plaintiff alleges is among the implications that an objectively reasonable listener would draw is a matter of law for the court to decide. *Id.*  Plaintiff's view of the Podcast's gist is irrelevant. *See, e.g., Cox Media Group, LLC v. Joselevitz*, 524 S.W.3d 850, 863-64 (Tex. App.—Houston [14th Dist.] 2017, no pet.)(rejecting doctor's characterization of gist and dismissing defamation claims where article was substantially true). How the Court deems an objectively reasonable person would interpret the Podcast, in its entirety, is what matters. *See Tatum*, 554 S.W.3d at 631; *Bentley*, 94 S.W.3d at 579.

The implication that Plaintiff was involved in a scheme with the FBI to manufacture evidence is simply *not* an implication that an objectively reasonable listener would draw from the Podcast. *See Tatum*, 554 S.W.3d at 631. In fact, Cavanagh makes a point of explaining that he does not think Lambros was lying about the things she told him, but that, after reviewing the inconsistencies with her recollection and insistence about Walken, in particular, and taking into account questions about the reliability of hypnosis and of eyewitness identification, in general, he questions whether Lambos may have been mistaken about her identification of Harrelson. *See supra,* fn. 22. While a reasonable implication of the Podcast may be that some of the FBI's use of hypnosis in this case wase questionable, Cavanagh nowhere criticizes the fact that Plaintiff submitted to hypnosis as requested by the FBI. Neither the fact that Cavanagh questioned

Plaintiff's recollection or some of the FBI's investigatory tactics (See Ex. A, Ep. 6, 14:19-20) support the asserted implication that Plaintiff manufactured evidence. Moreover, questioning the FBI's choice to use hypnosis on a witness—without criticizing the fact that Plaintiff submitted to hypnosis—is in no way defamatory of Plaintiff. *See Huckabee*, 19 S.W.3d at 429 (statement critical of the family courts in general and not of judge in particular was not defamatory). Because Plaintiff's alleged interpretation is unreasonable, it cannot serve as the basis for her defamation claim. *See, e.g.*, *Joselevitz*, 524 S.W.3d at 863-64.

**B.**     **The Podcast is privileged as a matter of law.**

The Podcast is also privileged as a matter of law. The United States Supreme Court has long recognized "[t]he special protected nature of accurate reports of judicial proceedings." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975). In Texas, that special protection is reflected in CPRC §73.002, which establishes privileges for journalists' truthful reporting on matters of public concern. Federal courts routinely dismiss libel claims under the fair report and fair comment privileges on a 12(b)(6) motion. *See, e.g.*, *Maxwell*, 815 F. Supp. at 215 (granting 12(b)(6) motion, concluding "that the broadcast in question is privileged as a matter of law under [CPRC] §§73.002(b)(1) and (b)(2)").

**1.**     **The Podcast is protected by the fair report privilege.**

"The media enjoy a privilege to report on judicial and official proceedings without regard for whether the information from such proceedings is actually true." *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 381 (Tex. 2019). Texas common law and CPRC §73.002(b)(1) protect fair, true, and impartial accounts of a judicial proceeding. Texas also recognizes a fair report privilege arising under the common law and the First Amendment. *See, e.g.*, *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 655 (Tex. App.—Houston [14th Dist.] 2008, no pet.)(common law); *Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 70 (Tex. App.—Waco 1990, no writ)(fair report

privilege arises under the First Amendment). The fair report privilege applies to substantially true accounts of judicial or official proceedings, such as a trial, law enforcement investigation, or witness testimony. *See* CPRC §73.002(b)(1)(A); *Hall*, 579 at 380-82 (reporting about a search warrant); *Herald-Post Publ'g Co., Inc. v. Hill*, 891 S.W.2d 638, 639 (Tex. 1994)(article based on witness's statements at trial).

Here, the FBI's investigation into Harrelson and the Judge Wood murder trial form the basis of the Podcast and Plaintiff's lawsuit. Among other things, Plaintiff alleges that Defendants defamed her by reporting in the Podcast that the FBI "found" her as a witness, that the FBI obtained statements from her through the use of hypnosis, and that she was the star witness at Harrelson's trial. Compl. ¶¶ 16-17. But those are all fair, true, and impartial accounts of what happened in the FBI's investigation and Harrelson's trial, as is the fact that Harrelson was convicted only after the jury heard evidence obtained through Plaintiff's hypnosis. *See Hall*, 579 S.W.3d at 382 ("The media does not simply report on individual events in isolation. Commonly, reporting involves investigating, tracking down related stories, and providing context for readers."). Indeed, Plaintiff readily admits these facts are true—that she was a principal witness in the Harrelson trial, that the FBI chose to use an unconventional technique, *i.e.*, hypnosis, to elicit testimony from her, and that portions of that hypnotized testimony were admitted into evidence. Thus, the Podcast is at the heart of what the privilege—and the First Amendment—is intended to protect because it focuses squarely on what happened in the FBI's investigation of Harrelson and the resulting trial. As such, the Podcast is privileged as a matter of law, and the Complaint has failed to state a claim upon which relief can be granted. *See Walker*, 938 F.3d at 749 (affirming dismissal under 12(b)(6) of a claim to which the fair report privilege applied).

### 2.     The Podcast is protected by the fair comment privilege.

The Podcast is also privileged under the "fair comment privilege," which protects a media

entity's "reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information." CPRC §73.002(b)(2). Matters covered by this privilege cannot be grounds for a libel action. *Id.* All of the Statements and Implications commented on the FBI's investigation of Judge Wood's murder (including the FBI's hypnotizing Plaintiff in an effort to identify the perpetrator) and Harrelson's resulting trial and conviction—all of which are matters of significant public concern. Further, these are accurate details of what happened during the FBI's investigation or are reasonable and fair comments on or criticisms of the actions of those involved, including the bases for such. *See Freedom Commc'ns, Inc. v. Sotelo*, No. 11-05-00336-CV, 2006 WL 1644602, at *5 (Tex. App.—Eastland June 15, 2006, no pet.). The fair comment privilege bars Plaintiff's defamation claims as a matter of law.

**C.**     <u>**Plaintiff fails to allege that Defendants acted with actual malice.**</u>

The correct standard of fault in this case is "actual malice," both because Plaintiff is a limited purpose public figure *vis-à-vis* the Harrelson trial and because the Podcast is about an ongoing matter of public concern. *See supra,* Sec. II.A.-C. Plaintiff's sole allegation concerning the standard of fault – "Defendants communicated false and defamatory statements about Plaintiff to third persons with malice …" (Compl. ¶ 19) – is both incorrect and conclusory. As such, it must be disregarded, and the Complaint dismissed. *Iqbal*, 556 U.S. at 664. *Walker*, 938 F.3d at 744 (affirming 12(b)(6) dismissal of defamation claim when plaintiff failed to adequately allege actual malice); *Maxwell*, 815 F. Supp. at 215 (dismissing limited purpose public figure's defamation claim because he did not plead actual malice).

Because Lambros is, at the least, a limited purpose public figure, she is required to plead actual malice in connection with her defamation claim. *See WFAA-TV v. McLemore*, 978 S.W.2d 568, 573 (Tex. 1998). To plausibly plead actual malice, the complaint must contain facts that show the defendant made the false publication with a *high degree of awareness* of probable falsity or

entertained serious doubts as to the truth of the publication at the time the statements were made. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989); *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex. 1989). The Complaint is devoid of these necessary allegations.

In Texas, a plaintiff is a limited purpose public figure if: (1) the controversy at issue into which plaintiff injected herself is public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff has more than a trivial or tangential role in the controversy; and (3) the alleged defamation is germane to the plaintiff's participation in the controversy. *WFAA-TV, Inc.*, 978 S.W.2d at 571 (*citing Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 433 (5th Cir. 1987)). Courts often deem trial witnesses in high-profile cases, like the Wood murder case, to be limited purpose public figures. *See Street v. Nat'l Broad. Co.*, 645 F.2d 1227, 1234-35 (6th Cir. 1981); *Russo v. Conde Nast Publ'ns*, 806 F. Supp. 603, 609-10 (E.D. La. 1992). Not only is the Judge Wood trial a public controversy and Plaintiff a key eyewitness in the case, but, Plaintiff has continued to thrust herself into the controversy surrounding Wood's murder and Harrelson's trial by appearing in multiple documentaries about the case.[22] Undoubtedly, she is a limited purpose public figure *vis-à-vis* commentary about the case, and, thus, must plead that each defendant acted with actual malice.

Plaintiff's sole allegation of "malice" falls far short. First, malice and "actual malice"[23] are entirely different standards. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989) (actual malice "is separate and distinct from traditional common law malice" and "does not include ill will, spite or evil motive."); *see also Huckabee*, 19 S.W.3d at 420 (distinguishing common law malice from

---

[22] Plaintiff stated that she has been in multiple documentaries, mentioning the earlier *FBI: The Untold Stories* pilot episode. Ex. B, Pt. 1, 5:9-6:20, 8:5-10:18; *see also* Ex. A, Ep. 6, 11:9-12:10.

[23] Importantly, actual malice "is separate and distinct from traditional common law malice" and "does not include ill will, spite or evil motive[.]" *Casso*, 776 S.W.2d at 558. *See also Huckabee*, 19 S.W.3d at 420 (distinguishing common law malice from actual malice).

actual malice). Plaintiff, therefore, failed to plead the correct standard. But even if she had cited the applicable actual malice standard, her Complaint lacks facts sufficient to establish that each Defendant made the statements knowing they were false or with reckless disregard of the truth. *See Gertz v. Welch*, 418 U.S. 323, 349 (1974); *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005); *Casso*, 776 S.W.2d at 558-59.

*The only* general allegations that may be interpreted to touch on Cavanagh's state of mind, are that: (1) he purposefully used only selected portions of Plaintiff's interview[24] and other materials to create certain false implications (Compl. ¶¶ 15-16); and (2) he intentionally misrepresented facts he presumably reviewed in the trial transcript, specifically, that Plaintiff was a "found" witness, a "star" witness, and that her statements to the FBI were obtained by hypnosis (Compl. ¶ 17). But even if accepted as true, these allegations do not and cannot rise to the level of actual malice.

First, Plaintiff has made no allegations regarding the state of mind of any Defendant other than Cavanagh, and thus, has failed to plead a defamation claim as to the others. Compl. ¶ 16-17.

Second, Cavanagh's editorial decisions about what portions of interviews to include in the Podcast cannot support a showing of actual malice. *See, e.g.*, *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 563 (5th Cir. 1997)(finding no actual malice when production company edited "the tape it shot to fit into the short time frame allotted to the ... segment."); *see also, e.g.*, *Huckabee*, 19 S.W.3d at 425-27 (holding editorial choice to exclude certain interviews insufficient evidence of actual malice); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974)(affirming protection afforded to editorial discretion). Nor does a failure to include all of a

---

[24] Further, while Lambros complains Cavanagh used only a small portion of the lengthy interview, she acknowledged during her interview that she knew that the entirety of her comments would not be included in the Podcast (Ex. B, Pt. 1, 15:10-15), signed a Release acknowledging that Defendants had no obligation to use any or all of her interview, *see* Ex. D, and Cavanagh told Lambros that the interview would be edited down, *see* Ex. B, Pt. 1, 15:10-17.

story's details amount to actual malice. *Huckabee*, 19 S.W.3d at 426 (holding that decision to omit certain facts did not grossly distort the story).

Third, Plaintiff's allegation that Cavanagh misrepresented facts in the trial transcript that Plaintiff was a "found" witness, a "star" witness, and that her statements to the FBI were obtained by hypnosis—is baseless. Plaintiff admits that the FBI obtained statements from her when she was under hypnosis and those statements were played in open court. She admits that she was a "principal witness in this case."  And the Podcast makes clear that she was the one who called the FBI to provide testimony, not that the FBI "found" her. *See supra,* Sec. III.A.1. Finally, to the extent Plaintiff alleges that Cavanagh did not review the entire trial transcript (more than 5000 pages) and should have, that, too, is insufficient to plead actual malice. A failure to investigate the facts before they are published does not amount to actual malice. *Kaufman*, 113 F.3d at 561; *Skeen*, 159 S.W.3d at 637. Because the Plaintiff has failed to and would not be able to adequately plead actual malice as to any Defendant, amendment of the Complaint would be futile, and her defamation claim must be dismissed with prejudice.

**D.      Plaintiff has failed to allege that she has suffered any damages.**

Plaintiff also fails to adequately plead damages, and her failure to do so provides yet another basis for dismissal of her defamation claim. Under Texas law, "the plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se."[25] *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)(orig. proceeding); *Corrosion Prevention Techs, LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *6 (S.D. Tex. Oct. 22, 2020)(dismissing defamation claim when plaintiff failed to adequately plead damages). Plaintiff's primary allegations of damages is that Defendants' actions have "irrevocably damaged her reputation" (Compl. ¶ 18), is too

---

[25] Here, because none of the disputed statements are defamatory *per se* (and Plaintiff does not allege as much), she must plead damages to state a claim.

conclusory to support her claim and must be disregarded. *See Iqbal*, 556 U.S. at 664. Her other allegations – that she has been "forced to answer questions in her practice" concerning the Podcast and that "she has been warned that the podcast's release may lead to her not being hired to testify in some or all cases," (Compl. ¶ 18) – are pure speculation and insufficient as a matter of law. Thus, Plaintiff has not stated a plausible defamation claim, and this claim should be dismissed. *Id.*

**E.**   **Plaintiff has failed to state a plausible fraudulent inducement claim or plead the claim with the heightened particularity required by Rule 9(b).**

Plaintiff's fraudulent inducement claim is a thinly-veiled attempt to preempt any affirmative defense based on the Release that Plaintiff executed and must be dismissed pursuant to Rule 12(b)(6) or Rule 9(b) for the following reasons. To state a claim for fraudulent inducement by omission, one must show: (1) Defendants failed to disclose facts to Plaintiff when Defendants had a duty to disclose such facts; (2) the facts were material; (3) Defendants knew of the facts; (4) Defendants knew that Plaintiff was ignorant of the facts and did not have an equal opportunity to discover the truth; (5) Defendant was deliberately silent and failed to disclose the facts with the intent to induce Plaintiff to take some action; (6) Plaintiff relied on the omission or concealment; and (7) Plaintiff suffered injury as a result of acting without knowledge of the undisclosed facts. *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 896 F. Supp. 2d 582, 618 (S.D. Tex. 2012).

**1.**   **Applicable standard.**

When a complaint alleges fraud, the plaintiff must plead the elements of her claim with the heightened particularity required by Rule 9(b). *See, e.g.*, *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)(affirming dismissal of fraud claim based on inadequate pleading). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *see also U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)(plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud).

### 2.     <u>Plaintiff fails to plead her claim with the necessary heightened particularity.</u>

Plaintiff's claim is one for fraudulent inducement by omission: that the Release was procured through fraud because Plaintiff was not made aware that two of the Harrelson brothers were involved in the Podcast. Thus, to state a claim for relief, Plaintiff must allege that Defendants had a duty to disclose this information. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Plaintiff has not alleged (and cannot show) that any such duty exists, much less with the heightened standard required by Rule 9(b).[26]

Whether such a duty exists is a question of law, and "[g]enerally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship." *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562 (Tex. 2019). Plaintiff does not allege that the parties had a fiduciary duty or confidential relationship that created a duty to disclose—indeed, no such relationship exists. Texas courts have held that producers do not owe any special duties to the participants in their productions. *See Jones v. Kirkstall Rd. Enters., Inc.*, No. 05-18-00592-CV, 2020 WL 2059910, at *4 (Tex. App.—Dallas Apr. 29, 2020, no pet.)(mem. op.)(television show producer had no duty to refrain from editing and producing episode in which plaintiff appeared); see also *Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 396 (Tex. App.—Dallas 1998, no pet.)(newspaper had no duty to refrain from publishing where arrested man lived). Because no special relationship existed between Defendants and Plaintiff and no duty was owed, as a matter of law, Plaintiff has failed to state a claim for fraudulent inducement and amendment of the

---

[26] Plaintiff's failure to plead any duty (or the basis for one) also requires dismissal of the fraudulent inducement claim pursuant to Rule 12(b)(6).

Complaint would be futile. This claim must be dismissed with prejudice. *See Carroll*, 470 F.3d at 1174 (affirming dismissal of fraud claim under Rule 12(b)(6) and 9(b) based on omission when plaintiffs failed to allege facts showing when it was incumbent on the defendant to disclose certain information or how defendant should have done so).[27]

### 3.     **The Release bars Plaintiff's fraudulent inducement claim.**

In addition, the Release signed by Plaintiff clearly bars her fraud claim. Under Texas law, "a clause that clearly and unequivocally expresses the party's intent to disclaim reliance on the specific misrepresentations at issue can preclude a fraudulent-inducement claim." *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228-30 (Tex. 2019). Courts must examine the contract and the totality of the circumstances when determining whether a waiver-of-reliance provision is binding. *Id.* Here, Plaintiff—a lawyer herself—signed the Release stating: "I confirm that I am not signing below in reliance on any statement, opinion, or representation by Producer or anyone acting on behalf of Producer." *See* Ex. D, Release at 2. Plaintiff has also made several other media appearances, is planning a cable access show, and is knowledgeable in business matters such that she was able to review and understand the Release's clear language.[28] *See Lufkin Indus.*, 573 S.W.3d at 229. This disclaimer of reliance is sufficient to bar Plaintiff's fraudulent inducement claim. *See Lufkin Indus.*, 573 S.W.3d at 228-30 (clause stating "neither party is relying upon any representation that is not specified in this [Statement of Work]…" sufficient to bar fraudulent inducement claim); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 180 (Tex. 1997)(disclaimer stating "none of us is relying upon any statement or representation of any agent of the parties being released hereby" precluded fraudulent inducement claim). Thus, the Release warrants dismissal of Plaintiff's fraudulent inducement claim. *See Shakeri v. ADT Sec. Servs., Inc.*,

---

[27] Further, as stated above, Plaintiff has not alleged that she suffered any injury as a result of entering the Release. *See Berge Helene*, 896 F.Supp.2d at 618.

No. 3:13-CV-2852-D, 2014 WL 5780955, at *7 (N.D. Tex. Nov. 6, 2014)(dismissing fraudulent inducement claim under Rule 12(b)(6) based on merger clause that disclaimed reliance), *aff'd*, 816 F.3d 283, 296 (5th Cir. 2016).

## IV.
## THE TEXAS CITIZENS PARTICIPATION ACT REQUIRES DISMISSAL OF PLAINTIFF'S CLAIMS

Plaintiff's claims should be dismissed under the Texas Citizens Participation Act, and Defendants are entitled to attorney's fees. The TCPA, which was amended in 2019, provides litigants with substantive rights to quickly and economically dispense with litigation arising out of the exercise of their First Amendment rights of free speech, petition, and association. *See* TCPA §§27.001-011; *Joselevitz*, 524 S.W.3d at 859 ("[T]he TCPA establishes a mechanism for *prompt* dismissal of lawsuits that threaten the rights of free speech, to petition, or of association.").

### A.     The TCPA applies to this action.

This lawsuit was filed in response to Defendants' exercise of their rights of free speech. "'Exercise of the right of free speech' means a communication made in connection with a matter of public concern," TCPA §27.001(3), and "[m]atter of public concern" is defined in the statute as "a statement or activity regarding: (A) a public official, public figure, or other person who has drawn substantial attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." *Id.* §27.001(7)(A)-(C). The Podcast covers a matter of public concern—namely, the investigation into Harrelson and criminal proceedings surrounding Judge Wood's murder and questions about some of the techniques used and how they affected the outcome. *See id.* In addition, Defendants were exercising their right to petition under the TCPA, which applies to "a communication ... pertaining to ... a judicial proceeding, [or] ... an official proceeding .... to administer the law," because the Podcast discussed the judicial proceedings in which Harrelson

was convicted of murder. *See id.* §27.001(4). Finally, this lawsuit arises from Defendants' actions in gathering, receiving, posting, and distributing their journalistic work through the Podcast, which are TCPA protected activities. *See id.* §27.010(b)(1). For any of these reasons, the TCPA applies.

**B.**     **Plaintiff cannot meet her burden to avoid dismissal, and Defendants are entitled to judgment as a matter of law.**

Once a movant has demonstrated that a legal action falls within the purview of the TCPA, the motion to dismiss *must* be granted and claims dismissed unless the respondent can establish by clear and specific evidence a *prima facie* case for each element of each of her claims—here, defamation and fraudulent inducement. TCPA §27.005(b), (c). A TCPA motion must also be granted if the movant can establish a valid defense or other grounds on which the moving party is entitled to judgment as a matter of law. *Id.* §27.005(d).

As explained above, Plaintiff cannot establish multiple elements of her defamation claim because the Statements or Implications are not capable of a defamatory meaning, are substantially true, are matters of opinion, or are not reasonable interpretations of the Podcast. *See supra,* Sec. III.A. Further, the Podcast at issue is privileged as a matter of law and is an accurate report of third-party allegations, further warranting dismissal. *See supra*, III.B. Plaintiff also failed to plead the correct legal standard of actual malice or allege damages. *See supra*, III, C-D.

Plaintiff's fraudulent inducement claim fails because she has failed to plead it with the particularity required by Rule 9(b) and because it is barred by the Release. *See supra*, III.E. Her claim also fails because Lambros never asked if the Harrelsons were participating in the Podcast, and Cavanagh told Lambros that he was talking to a lot of people, including people associated with the defendants in the Wood trial. *See* Ex. E, ¶ 6.[29] And, as both the Release and Cavanagh make clear, Lambros signed the Release willingly at the end of the interview, and with knowledge of her

---

[29] Cavanagh was not aware of Brett's Executive Producer credit until January 2020. *See* Ex. E, ¶ 9.

actions. *Id.* at 7; Ex. D, 1-2. Lambros was sophisticated and cognizant enough of the consequences of agreeing to its terms that she ensured she had her own copy of the Release. Ex. E, ¶ 7. *For the reasons explained above, Plaintiff has not, and cannot, plead each element of her claims.*

**C.     *Klocke v. Watson* does not preclude application of the TCPA.**

*Klocke v. Watson*, 936 F.3d 240, 249 (5th Cir. 2019), does not preclude the TCPA's application in this case because the statutory provisions relied upon in that case to determine the TCPA could not be applied in federal court were materially changed by the Texas Legislature in 2019 and became effective after the ruling in *Klocke*. In *Klocke*, the Fifth Circuit concluded that a prior version of the TCPA did not apply in federal court because, "[i]n contrast to the federal procedural requirements, the TCPA imposes additional requirements that demand judicial weighing of evidence." *Id.* at 246. The court highlighted the TCPA's prior "preponderance of the evidence" standard by which defendants were required to establish that the TCPA applied and that defendants had a valid defense to the claims. *Id.* The Texas Legislature significantly amended the TCPA, effective September 1, 2019, and the revised statute no longer uses the "preponderance of the evidence" standard. Thus, even if there was before, there is no longer any conflict between the TCPA and Rules 12(b)(6) and 56, and the TCPA should apply in federal court. *See id.* at 245-47.

**D.     Defendants are entitled to attorneys' fees.**

The TCPA mandates an award of attorney's fees to a successful movant, which Defendants seek herein. *See* TCPA §27.009(a); *Sullivan v. Abraham*, 488 S.W.3d 294, 296 (Tex. 2016).

## V.
## CONCLUSION

Because Plaintiff has failed to state a claim upon relief can be granted and Defendants have established that amendment of the Complaint would be futile, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice and award Defendants their attorney's fees and court costs in defending this action.

Respectfully submitted,

By: */s/ Laura Lee Prather*
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
State Bar No. 24007924
catherine.robb@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:     (512) 867-8400
Telecopier:     (512) 867-8609

*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of April, 2021, a copy of the foregoing has been

served upon counsel for all parties to this proceeding through the court's electronic filing system.

Roy Barrera, III
David A. Harris
THE BARRERA FIRM
424 East Nueva
San Antonio, Texas 78205

*/s/ Laura Lee Prather*
Laura Lee Prather