FILED
July 07, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: ___Breanna Coldewey___
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CHRYSANTHE PARKER** | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. 5:21-CV-175-DAE |
| | § § | |
| **SPOTIFY USA, INC., HIGH FIVE CONTENT, LLC, TRADECRAFT ALTERNATIVE, LLC, and JASON CAVANAGH** | § § § § § § | |
| Defendants. | § | |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Laura Lee Prather*
State Bar No. 1623400
laura.prather@hanesboone.com
Catherine Lewis Robb
State Bar No. 24007924
catherine.robb@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8609
*Attorneys for Defendants*

*\* Lead Counsel*

# TABLE OF CONTENTS

                                                                                                                                                                   **Page**

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

       I.       The Statements and Implications are substantially true, are not capable of a defamatory meaning, or are non-actionable opinion: Plaintiff ignores and waives these outcome-determinative arguments. ................................................ 2

      II.      Plaintiff failed to sufficiently plead actual malice. ............................................... 7

      III.     The Podcast is privileged as a matter of law. .......................................................... 9

      IV.     Plaintiff has failed to sufficiently plead damages .................................................. 10

      V.      Plaintiff has failed to state a plausible claim for fraudulent inducement. ............. 10

      VI.     The Texas Citizens Participation Act (TCPA) separately warrants dismissal. ............................................................................................................... 11

CONCLUSION ..................................................................................................................... 12

CERTIFICATE OF SERVICE .............................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Anderson v. Durant*,
    550 S.W.3d 605 (Tex. 2018) ...................................................................................................11

*Andrews Cnty. v. Sierra Club*,
    463 S.W.3d 867 (Tex. 2015) ...................................................................................................12

*Arkansas v. Wilmington Tr. Nat'l Ass'n*,
    No. 3:18-CV-1481-L, 2020 WL 1249570 (N.D. Tex. Mar. 16, 2020) ......................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................10

*Black v. Panola Sch. Dist.*,
    461 F.3d 584 (5th Cir. 2006) .....................................................................................................3

*Burbage v. Burbage*,
    447 S.W.3d 249 (Tex. 2014) ...................................................................................................10

*Burch v. Coca-Cola Co.*,
    119 F.3d 305 (5th Cir. 1997) .....................................................................................................5

*Cain v. Hearst Corp.*,
    878 S.W.2d 577 (Tex. 1994) .....................................................................................................9

*Dallas Morning News, Inc. v. Tatum*,
    554 S.W.3d 614 (Tex. 2018) ............................................................................................5, 6, 7

*Diamond Beach Owners Ass'n v. Stuart Dean Co.*,
    No. 3:18-CV-00173, 2018 WL 7291722 (S.D. Tex. Dec. 21, 2018) .......................................10

*Hearn v. Deutsche Bank Nat. Tr. Co.*,
    No. 3:13-CV-2417-B, 2014 WL 4055473 (N.D. Tex. Aug. 15, 2014) ....................................10

*Howley v. Bankers Standard Ins. Co.*,
    No. 3:19-CV-2477-L, 2021 WL 913290 (N.D. Tex. Mar. 10, 2021) ........................................3

*Jackson v. Henderson*,
    01-03-00843-CV, 2004 WL 1631394 (Tex. App.—Houston [1st Dist.] July
    22, 2004, no pet.)(mem. op.) ...................................................................................................11

*Kamps v. Baylor University, et. al.*,
    592 F. App'x 282 (5th Cir. 2014), *cert. denied,* 575 U.S. 1038 (2015) ....................................3

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) ..............................................................................11

*Lee v. TMZ Productions, Inc.*,
    710 F. App'x 551 (3rd Cir. 2017) ........................................................................9

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015)........................................................................11, 12

*Miami Herald Publishing Co. v. Tornillo*,
    418 U.S. 241 (1974)..............................................................................................

*New York Times, Inc. v. Isaacks*,
    146 S.W.3d 144 (Tex. 2004)................................................................................5

*Northon v. Rule*,
    409 F. App'x 146 (9th Cir. 2011) ......................................................................12

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ......................................................................1, 6, 8

*Partington v. Bugliosi*,
    825 F. Supp. 906 (D. Haw. 1993) (Ezra, J.), *aff'd*, 56 F.3d 1147 (9th Cir.
    1995) ..........................................................................................................6, 7, 10

*Peter Scalamandre & Sons, Inc. v. Kaufman*,
    113 F.3d 556 (5th Cir. 1997) ...............................................................................5

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F.3d 370 (5th Cir. 2004) ...............................................................................3

*Russo v. Conde Nast Publ'ns*,
    806 F. Supp. 603 (E.D. La. 1992)......................................................................8, 9

*Spoljaric v. Percival Tours, Inc.*,
    708 S.W.2d 432 (Tex. 1986)..............................................................................10

*Street v. Nat'l Broad. Co.*,
    645 F.2d 1227 (6th Cir. 1981) .............................................................................8

*Sullivan v. Abraham*,
    488 S.W.3d 294 (Tex. 2016)..............................................................................12

*Texas Beef Grp. v. Winfrey*,
    201 F.3d 680 (5th Cir. 2000) ...............................................................................6

*Trotter v. Jack Anderson Enterprises, Inc.*,
    818 F.2d 431 (5th Cir. 1987) ...............................................................................8

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ..................................................................................9

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 27.005 ......................................................................12

TEX. CIV. PRAC. & REM. CODE § 27.009 ......................................................................12

TEX. CIV. PRAC. & REM. CODE § 73.002 ........................................................................9

## INTRODUCTION

Plaintiff's misguided lawsuit stems from her displeasure with how she believes she was portrayed in the podcast "Son of a Hitman" (the "Podcast"). But, as Defendants established in their Motion to Dismiss ("MTD") (ECF No. 12), her displeasure falls far short of stating actionable claims for defamation and fraudulent inducement. And Plaintiff's Response to Defendants' Motion to Dismiss ("Response") (ECF No. 16) does nothing to advance her claims.

As outlined in the MTD, Plaintiff's defamation claim fails because: (a) the statements she challenges are all either substantially true, not capable of a defamatory meaning, non-actionable opinion, or unreasonable interpretations of the Podcast (MTD at 13-19), and (b) Plaintiff failed to sufficiently plead essential elements of her claim (actual malice and damages). MTD at 24-25. Plaintiff makes no meaningful attempt to counter these arguments. Instead, she seemingly argues that the Podcast's inquiry into whether Charles Harrelson ("Harrelson") received a fair trial and was guilty of murdering Judge John Wood casts doubt on her integrity. But whether the Podcast questions the legitimacy of the trial process and outcome has no bearing on whether *Plaintiff* was defamed. The Podcast's commentary on the highly publicized trial of Harrelson--based upon facts that were disclosed and analyzed at length--is true, non-defamatory, and protected opinion as a matter of law. Plaintiff simply cannot state a defamation claim on the basis of that commentary. *See, e.g., Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (book about famous murder trial was protected opinion because it "is a forum in which a reader would be likely to recognize that the critiques of the judges, witnesses, and other participants … represent the highly subjective opinions of the author rather than assertions of verifiable, objective facts").

In the few instances where Plaintiff attempts to rebut Defendants' arguments, she comes up short. She argues that she is not required to plead actual malice because she is not a public figure and the Podcast is not about an ongoing matter of public concern. Beyond conceding that

she has not sufficiently pleaded actual malice, this argument also ignores the decades of continuing interest in Judge Wood's murder and the ongoing controversies surrounding the reliability of eyewitness testimony and testimony, like Plaintiff's, that was elicited through hypnosis. Plaintiff's failure to plead actual malice also dooms her argument that the fair report and fair comment privileges do not apply.

Plaintiff's fraudulent inducement claim similarly fails and should be dismissed. Plaintiff does not plead the claim with the heightened particularity required by Rule 9(b) and the Talent Appearance Release (the "Release") she signed contains a disclaimer of reliance clause that bars this claim. MTD at 25-27; MTD, Ex. D (ECF 12-7), Release at 1. Plaintiff relies entirely on inapplicable case law to argue that Defendants had a duty to disclose that the Harrelson brothers were involved with the Podcast but fails to explain why such a duty would exist here.

Finally, the Texas Citizens Participation Act ("TCPA") separately warrants dismissal. Contrary to Plaintiff's assertions, the TCPA does apply here. As amended, the TCPA neither has a heightened evidentiary standard nor does it conflict with the federal rules. And under the TCPA, Plaintiff has failed to provide "clear and convincing" evidence to establish a *prima facie* case for each essential element of her claims, requiring dismissal of her claims.

## ARGUMENT

**I. The Statements and Implications are substantially true, are not capable of a defamatory meaning, or are non-actionable opinion: Plaintiff ignores and waives these outcome-determinative arguments.**

Defendants established that the disputed statements and implications are not actionable because they are either substantially true, non-defamatory, or protected opinion. *See* MTD at 13-18. Rather than rebut these arguments, Plaintiff doubles down on her conclusory allegations. This fundamental error warrants dismissal of her claim.

**Stmt 1 – Found Statement:** The statement that the FBI "found" Plaintiff as a witness is

non-actionable for the simple reason that it is not defamatory. *See* MTD at 13-14. Plaintiff does not confront this argument. Instead, she insists that the Podcast suggests the FBI had to search for her and claims that Defendants withheld from listeners that Plaintiff reached out to the FBI on the day of the murder. Resp. ¶¶ 15-17. Plaintiff also alleges that the Podcast "fails to disclose that [Plaintiff] described Harrelson to an FBI sketch artist shortly after first contacting [the FBI] and well prior to being hypnotized." Resp. ¶¶ 14-17. This is demonstrably false. The Podcast makes all of these points using audio clips from Plaintiff's interview ("Interview"):

- Upon hearing Judge Wood had been assassinated, Lambros stated that she "**headed for the phone and instantly called the FBI. And then they immediately asked me to come in.**" MTD, Ex. A-1 (ECF 12-3) Ep. 6, 14:4-6.

- Lambros explained that she worked with the FBI extensively to create a picture of Harrelson, "**but it didn't quite come together. So, the next step was for me to start working with the hypnotist.**" *Id.* 14:15-18.

Thus, the Podcast explains the sequence of events *exactly as Plaintiff describes them*.[1] This explanation--one that Plaintiff seemingly concedes is accurate--is not actionable.

**Stmt 2 – Star Witness Statement** – This statement is nonactionable because it is opinion, it is true, and it is not defamatory. *See* MTD at 14-15. Plaintiff's Response completely ignores these arguments and thus has waived her claim with respect to this statement. The Court may dismiss the claim without further review.[2] Further, even if the statement were capable of a

---

[1] The Fifth Circuit has repeatedly held that if allegations are contradicted by exhibits incorporated in the Complaint, the exhibit, not the Plaintiff's interpretations or allegations, controls. *See, e.g., U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004); *Kamps v. Baylor University, et. al.*, 592 F. App'x 282, n.1 (5th Cir. 2014), *cert. denied,* 575 U.S. 1038 (2015).

[2] "Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level." *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *4-5 (N.D. Tex. Mar. 16, 2020) (dismissing claim with prejudice on waiver grounds when plaintiff did not address argument raised in motion to dismiss). *See also Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (failure to defend claim in response to motion to dismiss constituted abandonment); *Howley v. Bankers Standard Ins. Co.*, No. 3:19-CV-2477-L, 2021 WL 913290, at *7 (N.D. Tex. Mar. 10, 2021) (same).

defamatory meaning (it is not), it is substantially true and a statement of opinion (in fact, Plaintiff's opinion).[3] In the Interview, Plaintiff repeatedly highlighted her importance to the case, going so far as to describe herself as "the principal witness in the case" (MTD, Ex. A-2 (ECF 12-3) Ep. 7, 3:1-2)[4] – something the Response fails to acknowledge.

**Stmt 3 – Hypnosis Statement** – Here, Plaintiff makes the same fatal error she made with respect to Statement 2: she does not even attempt to address Defendants' argument that this statement is nonactionable because it is true and not capable of a defamatory meaning. *See* fn. 2, *supra*; MTD at 15. Moreover, Plaintiff admitted the statement is true, stating in the Podcast that she was hypnotized and interviewed by the FBI and that a tape of this interview was played at trial. *See* Ep. 6, 14:16-18; Ep. 7, 3:3-6. As noted above, the Podcast explains the sequence of events exactly as Plaintiff claims they occurred, including that she was not hypnotized until after her initial meeting with the FBI and after she had started working with them on a sketch of the suspect. *See* Ep. 6, 14:11-15:2, 15:21-25. Plaintiff cannot now complain that this same sequence of events disclosed in the Podcast is somehow defamatory.

**Stmt 4 – Unusual Witness Statement** – As Defendants established in the MTD, and Plaintiff fails to rebut, this statement is true, not capable of a defamatory meaning, and is protected opinion. *See* MTD 15-16; *see also* fn. 2, *supra*. In her Response, Plaintiff argues--for the first time--that the teaser for Episode 6 "casts [Plaintiff] in a negative light" by saying that "something isn't adding up with [the prosecution's] star witness," and including a quote from prosecutor Ray Jahn characterizing Plaintiff as "a very unusual witness" but "omitting" (in the title but not the episode) Jahn's additional commentary, a "very, very effective" witness. *See* Resp. ¶ 12. But this argument

---

[3] Interestingly, after playing up her importance to Cavanagh, she now appears to argue that he should not have believed her, nor used her own statements about her role in the trial.
[4] Plaintiff also said she was the only witness to place Harrelson at the scene of the crime and highlighted her role in identifying him as the hitman. Ep. 7, 3:3-4.

holds no water. There is nothing defamatory about the term "unusual." *See, e.g.*, *Burch v. Coca-Cola Co.*, 119 F.3d 305, 326 (5th Cir. 1997) ("vague and general" statement was not defamatory).[5] And, the entire quote from Jahn was included in Episode 6, and the law clearly provides that the court must view statements in context. Ep. 6, 10:21-22; *New York Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004).

**Imp. 1 – Conviction Implication** – The implication that Harrelson was convicted based only on Plaintiff's testimony is an unverifiable statement. *See* MTD at 16; *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018) ("[S]tatements that are not verifiable as false are not defamatory."). But even if the statement were provable as true or false, the fact a jury relied on eyewitness testimony is not defamatory. *See* MTD at 16; *Tatum*, 554 S.W.3d at 638. Plaintiff makes no attempt to meaningfully rebut this argument. *See* fn. 2, *supra*. Instead, she argues that the Podcast implies that "Harrelson's conviction relied *only* on information obtained through her hypnosis." Resp. ¶ 13. This again is demonstrably untrue. The Podcast discusses the different evidence that the FBI collected and used against Harrelson. *See, e.g.,* Ep. 1, 19:42-20:30 (time) (discussing the rifle stock); Ep. 6, 16:14-17:9 (discussing tip to Texas Rangers about Harrelson being in town the day Wood was shot). Viewing the Conviction Implication in this context, as the Court must do, only reinforces that the implication is not defamatory. *See Isaacks*, 146 S.W.3d at 154 (statements are construed as a whole based upon a reasonable person's perception of them).

**Imp. 2 – Unreliable Eyewitness Implication** – Plaintiff is clearly displeased that Cavanagh has questions about the reliability of her memory and testimony. But Cavanagh's

---

[5] Plaintiff simply takes issue with the way the Podcast was edited, but it is well-settled that editorial control rests with the creators of the Podcast, not Plaintiff. *See, e.g., Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 257 (1974) (affirming protection afforded to editorial discretion); *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 563 (5th Cir. 1997)(finding no actual malice when production company edited tape it shot to fit into the time frame allotted to the segment).

observations about her reliability based upon his discussions with her are his opinions, not provable statements of fact, and are not actionable as a matter of law. *See Tatum*, 554 S.W.3d at 638; *Partington,* 56 F.3d at 1157 (assessments of trial performance are inherently subjective and not susceptible of being proved true or false). Moreover, the Podcast demonstrates that *Plaintiff* planted the seed of doubt about her reliability as a witness (an issue she continues to avoid in her Response). She insisted that Christopher Walken directed a documentary about the Wood murder in which she had appeared, but Cavanagh investigated further and learned that Walken was not involved in the film. When Cavanagh asked her about this, she doubled down:

> Cavanagh: **"Lambros, seemed so certain that she saw Charles Harrelson the morning of the murder, but then she was also sure ... that Christopher Walken directed her in a documentary about the Judge's murder, and that just wasn't the case. I want to try her one more time, to see if she could have made an innocent mistake."**
>
> Plaintiff: **"I really don't feel any confusion whatsoever. It's sort of like, yup, it's Harrelson, and I was sure it's Walken and I was sure."**

Ep. 7, 15:16-23; 18:4-6. The Podcast makes clear that this exchange--combined with Cavanagh's general concerns about the use of hypnosis testimony in criminal proceedings and his discussion of third-party studies on the inherent unreliability of eyewitness testimony--form the basis of Cavanagh's opinion concerning the reliability of Plaintiff's identification of Harrelson.[6] Cavanagh's comments are quintessential protected opinion. *See, e.g.*, *Partington v. Bugliosi*, 825 F. Supp. 906, 920 (D. Haw. 1993) (Ezra, J.) (statement nonactionable because defendants "reveal[ed] the factual bases of their opinion (none of which are contested by [the plaintiff])"), *aff'd*, 56 F.3d 1147 (9th Cir. 1995); *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 688 (5th Cir. 2000) ("[O]pinions, though strongly stated ... based on truthful, established fact ... are not actionable

---

[6] Plaintiff's only mention of this issue in her Response is a vague reference to her "mis-remembering" or "potential conflation" *see* Resp. ¶ 62, but it was Plaintiff who tied her credibility on her identification of Harrelson to her faulty identification of Walken.

under the First Amendment."). That Plaintiff disagrees with Cavanagh's opinion does not make it actionable defamation. *See, e.g.*, *Kaufman*, 113 F.3d at 564 (no liability for defamation when defendant "refused to corroborate the [plaintiff's] party line.").

**Imp. 3 – Manufactured Evidence Implication** – Plaintiff asserts that the Podcast implies that she was complicit in a scheme to convict Harrelson with manufactured evidence. But this is not an implication that an objectively reasonable listener would draw. *See Tatum*, 554 S.W.3d at 631; MTD at 18-19. Cavanagh nowhere criticizes the fact that Plaintiff agreed to be hypnotized or suggests that Plaintiff manufactured or assisted in manufacturing evidence. In fact, he explicitly states that he does not think Plaintiff was "lying" about what she told him, just that her memory may have been faulty. MTD, Ex. A-4 (ECF 12-3) Ep. 10, 51:3-4.

## II.     Plaintiff failed to sufficiently plead actual malice.

Plaintiff--the self-proclaimed "principal witness" in the Harrelson trial--is a limited-purpose public figure, and the Podcast explores matters of public concern. Thus, Plaintiff was required to, but does not, allege that each Defendant acted with actual malice. This error is fatal to her claim. Tellingly, Plaintiff does not attempt to correct this deficiency. Instead she denies she is a public figure (without addressing precedent to the contrary) and that the Podcast discusses matters of public concern.[7] Plaintiff's assertions fail for two reasons.

First, Plaintiff ignores that the topics explored in the Podcast--the Wood murder and trial and the reliability of the techniques used at the trial, including eyewitness and hypnosis testimony--have been the subject of public debate for decades. Judge Wood's murder and Harrelson's conviction generated widespread media coverage at the time of the trial and still attract public

---

[7] The Response also recycles the Complaint's assertion that Cavanagh failed to review the trial transcript, but a failure to investigate does not amount to actual malice. *See, e.g., Partington*, 825 F. Supp. at 917-18 (plaintiff failed to plead actual malice when he alleged that the defendants failed to investigate all sources); MTD at 24.

attention today.[8] Because the trial involved the first murder of a federal judge in a century, it had broad implications concerning the public's perception of the justice system and thus is a matter of public concern. *See, e.g. Partington*, 56 F.3d 1147 n.18 (1995) ("Given that the trial did not involve purely private matters but had broader implications concerning the public's perception of the justice system, we conclude that the trials were a public controversy."). And the use of eyewitness and hypnosis testimony has long been and continues to be controversial.[9] MTD at 16-17.

Second, trial witnesses in high-profile cases, like Plaintiff, have consistently been deemed public figures even decades later – an argument Plaintiff makes no attempt to rebut. *See Street v. Nat'l Broad. Co.*, 645 F.2d 1227, 1233-36 (6th Cir. 1981) (major witness in a criminal prosecution was a public figure with regard to the trial 40 years later); *Russo v. Conde Nast Publ'ns*, 806 F. Supp. 603, 609-10 (E.D. La. 1992) (prosecution's star witness in a 25-year-old case was still a public figure with regard to his trial testimony). Plaintiff concedes she was "the principal witness in the case," Ep. 7, 3:1-2, and boasted in the Interview about the instant notoriety she gained for her involvement in the case.[10] And, the fact that Cavanagh approached her about participating in the Interview does not defeat her classification as a public figure. *See Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 436 (5th Cir. 1987) ("[A]n individual cannot erase [her] public-figure

---

[8] *See, e.g.*, Madalyn Mendoza, *Woody Harrelson's father killed a federal judge in San Antonio 42 years ago*, MYSANANTONIO.COM, June 2, 2021, https://www.mysanantonio.com/lifestyle/article/charles-harrelson-san-antonio-judge-murder-woody-16217573.php); Nur Ibrahim, *Did Woody Harrelson's Father Kill a Texas Judge in 1979?*, SNOPES, June 5, 2021, https://www.snopes.com/fact-check/woody-harrelsons-father-kill-judge/.

[9] Ep. 1, 19:22-20:1; Ep. 6 14:19-20, 15:3-14, 37:25-38:5; Ep. 7, 3:3-6; 4:5-19, 15:16-23, 18:23-19:4; Ep. 9, 12:14-20; Ep. 10, 51:3-24 (discussion about the unreliability of eyewitness testimony). In fact, just this year, the Texas Legislature passed a law prohibiting hypnotic testimony in criminal proceedings. *See* Texas Senate Bill 281, available at https://capitol.texas.gov/tlodocs/87R/billtext/pdf/SB00281F.pdf#navpanes=0.

[10] Ep. 6, 11:9-12:10, 34:13-16; Ep. 7, 2:19-21, 17:1-18:7; MTD, Ex. B, Pt. 1 at 12:22-13:19, 32:15-34:7, 58:21-23, 84:12-85:15; MTD Ex. B, Pt. 2 at 19:4-11, 24:22-25:21, 38:9-13 (discussion about the unreliability of eyewitness testimony).

status by limiting public comment and maintaining a low public profile."); *Russo*, 806 F. Supp. at 607-08 (plaintiff was a limited-purpose public figure although he gave interviews regarding the controversy only after the media sought him out).

### III.     **The Podcast is privileged as a matter of law.**

Plaintiff alleges that the fair report and fair comment privileges do not apply because Defendants "abused" the privileges by "presenting her assistance to the FBI and eyewitness identification of Charles Harrelson and her testimony at his trial in a false light." Resp. ¶ 42. But Texas courts rejected false light as a cause of action over 25 years ago. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994). Further, Plaintiff's conclusory statements fall far short of alleging that Defendants "republished [the Podcast] with actual malice after it ceased to be of public concern"--the standard for defeating these privileges. CPRC § 73.002(a). *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 745 (5th Cir. 2019) (fair report privilege does not extend to republication made with actual malice and after it ceased to be of public concern); *Lee v. TMZ Productions, Inc.,* 710 F. App'x 551 (3rd Cir. 2017) (affirming 12(b)(6) dismissal of defamation claims arising out of true crime blog based on fair report privilege and failure to plead actual malice). Here, Plaintiff has entirely failed to plead actual malice.

Moreover, the fair report and fair comment privileges protect substantially true accounts of judicial proceedings. *See Walker*, 938 F.3d at 745. The only alleged inaccuracy Plaintiff identifies is that Defendants did not specify *which side* introduced her hypnotic testimony into evidence at trial. Even if true, this is a trivial inaccuracy[11] that does not defeat either privilege. *See id.*; *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 715 (Tex. 2016) (plaintiff has burden of showing that media defendant's account of official proceedings was not substantially true);

---

[11] Plaintiff herself failed to mention this fact in the Interview, instead focusing on the unprecedented nature of the admission of this type of testimony in a criminal trial. Ep. 7, 3:3-6.

*Partington*, 825 F. Supp. at 923 (true statement was nonactionable even when defendants did not include fact that the plaintiff claimed was exculpatory). Thus, the fair report and fair comment privileges bar Plaintiff's defamation claim.

### IV. **Plaintiff has failed to sufficiently plead damages.**

Plaintiff's failure to sufficiently plead damages bars her claim and her affidavit stating that the Podcast has "attacked my reputation for truthfulness and veracity in public and that public disparagement has injured me in the practice of my profession" cannot save it. Resp., Ex. A-1, Pl.'s Aff. at IV. These allegations are simply too conclusory to support her claim and must be disregarded. *See Burbage v. Burbage*, 447 S.W.3d 249, 259-263 (Tex. 2014) (speculative circumstantial evidence is insufficient to establish defamation damages); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[12]

### V. **Plaintiff has failed to state a plausible claim for fraudulent inducement.**

Plaintiff ignores Defendants' argument that, by including a valid disclaimer of reliance clause, the Release bars her fraudulent inducement claim. *See* MTD at 27-28. Instead, she cites *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432 (Tex. 1986) for the principle that silence can constitute a false representation where circumstances impose a duty to speak. This case is inapplicable. There, the defendant acknowledged that he knowingly made a false promise to his employees. *Id.* at 433-34. Here, Plaintiff has not even alleged that any Defendant made any promises to her, let alone any false promises.

---

[12] Plaintiff's passing reference to "defamation *per se*," likely an effort to avoid the requirement to plead damages with particularity, must also be disregarded. No defamation *per se* claim was made and "it is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." *Diamond Beach Owners Ass'n v. Stuart Dean Co.*, No. 3:18-CV-00173, 2018 WL 7291722, at *4 (S.D. Tex. Dec. 21, 2018), *r&r adopted*, No. 3:18-CV-00173, 2019 WL 245462 (S.D. Tex. Jan. 17, 2019); *Hearn v. Deutsche Bank Nat. Tr. Co.*, No. 3:13-CV-2417-B, 2014 WL 4055473, at *4 n.3 (N.D. Tex. Aug. 15, 2014) (court "does not base its decision on allegations raised for the first time in the motion to dismiss or the plaintiff's response").

Further, Plaintiff's cite to *Jackson v. Henderson*, 01-03-00843-CV, 2004 WL 1631394 (Tex. App.—Houston [1st Dist.] July 22, 2004, no pet.) (mem. op.) for the proposition that a duty to disclose may arise when one voluntarily discloses partial information supports Defendants. In *Jackson*, the court dismissed a fraudulent inducement claim because the defendant did not know the information he was accused of withholding and did not think that the plaintiff thought differently. Similarly, here, Cavanagh did not know Brett Harrelson was to be given an Executive Producer credit until *after* the Interview and she signed the Release. *See* MTD, Ex. E (ECF 12-8) at ¶ 9. Tellingly, Plaintiff does not allege that she ever discussed Brett with Cavanagh or told him she would only speak with him if Brett was not involved.[13]

## VI. The Texas Citizens Participation Act (TCPA) separately warrants dismissal.

This case also should be dismissed in its entirety under the TCPA. Contrary to Plaintiff's assertions, the TCPA does apply, and she has failed to meet her burden under the TCPA. She relies on *Klocke v. Watson*, 936 F.3d 240, 249 (5th Cir. 2019) to argue the TCPA does not apply in federal court because the evidentiary standard imposes a higher burden than the federal rules ("FRCP"). Since the amended TCPA addresses these concerns, Plaintiff's argument is unavailing.

As Plaintiff admits, the gravamen of the Fifth Circuit's analysis in *Klocke* was that the "preponderance of the evidence" standard conflicted with the FRCP and that this "preponderance of the evidence" standard was removed from the TCPA in 2019. Resp. ¶ 48. Plaintiff argues instead that because the "clear and specific" evidence standard remains in the TCPA, an inherent conflict between the TCPA and FRCP remains. As the Texas Supreme Court held *In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015), however, "the [TCPA] does not impose an elevated evidentiary

---

[13] Plaintiff also fails to identify any damages she suffered as a result of the alleged fraudulent inducement, and it is difficult to see how she could since she neither claims out-of-pocket nor benefit-of-the-bargain damages, the standard measure of damages for fraudulent inducement. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

standard." *See also Andrews Cnty. v. Sierra Club*, 463 S.W.3d 867, 867 (Tex. 2015) (**"**In [*Lipsky*] we explained that the phrase 'clear and specific evidence' [does not] impose[] a heightened evidentiary burden…"). Thus, the "clear and specific evidence" standard does not conflict with the FRCP, nor does it bar the application of the TCPA in federal court.

Plaintiff's alternative argument that, even if the TCPA applies, she has established a *prima facie* case for each essential element of her claims with clear and specific evidence also fails. *See* TCPA § 27.005(c). Plaintiff simply recycles the same one-sided and conclusory allegations from her Complaint in affidavit form. This is insufficient. *See In re Lipsky*, 460 S.W.3d at 592 (finding plaintiff's conclusory affidavit "devoid of any specific facts" was insufficient under TCPA's "clear and specific evidence" standard). Moreover, Defendants have established that they are entitled to judgment as a matter of law. *See* TCPA § 27.005(d); *see also Northon v. Rule*, 409 F. App'x 146 (9th Cir. 2011) (affirming anti-SLAPP dismissal when plaintiff failed to establish statements in true crime book were defamatory). Thus, the Court should dismiss Plaintiff's claims under the TCPA and award Defendants their attorney's fees. *See id.* § 27.009(a); *Sullivan v. Abraham*, 488 S.W.3d 294, 296 (Tex. 2016).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant the MTD, dismiss Plaintiff's claims against all Defendants with prejudice, and award Defendants their attorney's fees and court costs in defending this action.

Respectfully submitted,

By: */s/ Laura Lee Prather*
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
State Bar No. 24007924
catherine.robb@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:	(512) 867-8400
Telecopier:	(512) 867-8609

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of June, 2021, a copy of the foregoing has been served upon counsel for all parties to this proceeding through the court's electronic filing system.

Roy Barrera, III
David A. Harris
THE BARRERA FIRM
424 East Nueva
San Antonio, Texas 78205

*/s/ Laura Lee Prather*
Laura Lee Prather